NOAH A. HILLMAN *v.* FRANK STOCKETT, ET AL.

[No. 6, January Term (Adv.), 1945.]

642

*Decided per curiam October 27, 1944; opinion filed November 16, 1944.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, MELVIN, BAILEY, CAPPER, and HENDERSON, JJ.

*Noah A. Hillman* for the appellants.

*William C. Walsh, Attorney General,* and *Charles Markell,* with whom were *Hall Hammond, Deputy Attorney General,* and *Wilbur R. Dulin* on the brief, for the appellees.

MARBURY, C. J., delivered the opinion of the Court.

This case arose by the filing of a petition for the writ of mandamus in the Circuit Court for Anne Arundel County, on September 30, 1944. The petitioner, Noah A. Hillman, recites that he is a citizen of the United States, and of the State of Maryland, a resident and tax payer of the City of Annapolis, and a member of the Bar of the State of Maryland. The defendants are the Board of Supervisors of Election for Anne Arundel County. The

644

Secretary of State of Maryland filed an intervening petition and was made a party defendant by order of Court. All of the defendants demurred. The Court below sustained the demurrers and dismissed the petition. An appeal was immediately taken to this Court. On account of the public interest involved, and the necessity of a decision before the election of November 7, 1944, the case was advanced and heard on October 26, 1944. A *per curiam* order was filed on October 27, 1944, affirming the order of the Court below. The reasons for the order are now given.

The petition for mandamus recited the passage by the General Assembly of 1943, of two bills, each proposing amendments to the Constitution of Maryland. One of these is Chapter 772 and the other is Chapter 796. Petitioner contended that these bills, proposing these amendments, were not in accord with the provisions of the Constitution prescribing the method by which it may be amended, and as a result, the Supervisors of Election were without power to print the propositions on the official ballots to be used at the election to be held at Anne Arundel County, on the 7th day of November. The Court was asked to issue a writ commanding the Supervisors of Election to refrain and abstain from canvassing the proposed amendments, and, if time permitted, commanding them to refrain and abstain from printing the amendments upon the official ballots to be used at the election. The demurrers said that the petition was bad in substance and insufficient in law, that the facts set out in the petition did not entitle the petitioner to the issuance of the writ, that both Chapter 772 and Chapter 796 were valid, legal, proper and constitutional enactments proposing amendments to the Constitution of Maryland, and that the Court was without jurisdiction or power to grant the relief because the matters as to which the aid of the Court was sought were confined, by the Constitution of Maryland, to the legislative and executive branches of the State Government, and not to the judicial branch

Inasmuch as the power of the Court is challenged in these demurrers, we shall first refer to that, although it was not stressed in the argument before us. The questions raised by the petitioner do not have to do with the progression through the two houses of the Legislature of a bill proposing a constitutional amendment. Nor do they have to do with the determination whether a majority of votes were cast in favor of such amendment. These were the questions raised in the case of *Worman v. Hagan,* 78 Md. 152, 27 A. 610. The questions here have to do with the form of proposals to amend the Constitution, and a proper interpretation of certain sections of the Constitution, which it is claimed were applicable and were not followed by the General Assembly. We are not dealing with amendments which have been voted on and proclaimed by the Executive. We are dealing with the construction of certain sections of the Constitution, and the applicability of these sections to the proposals. Construction of constitutional provisions has been too often and too frequently held to be within the province of the judicial branch of the Government, for there to be any doubt about it now. We entertain none. It is the province and the duty of the Courts to interpret the Constitution when questions involving its interpretation are properly before them.

It was also contended by the appellees, although these contentions were abandoned at the hearing before us, that the petitioner, in none of the capacities in which he filed his petition, was entitled to ask the aid of the Courts, and that mandamus was not the proper remedy in this case. In view of the abandonment, we shall not discuss these questions further than to say that there have been several cases in this Court, which uphold both the right of the petitioner to sue and the correctness of his procedure. These are *Pumphrey v. Mayor, etc., Baltimore,* 47 Md. 145, 28 Am. Rep. 446; *Levering v. Board of Supervisors,* 129 Md. 335, 99 A. 360; *Levering v. Board of Park Commissioners,* 134 Md. 48, 106 A. 176; *Levering v. Board of Supervisors,* 137 Md. 281, 112 A. 301; and *Brawner v. Curran,* 141 Md. 586, 119 A. 250.

Petitioner contended that the titles to both Chapter 772 and Chapter 796 were insufficient and misleading, and did not correctly describe the purposes of the legislation, contrary to the provisions of Article III, Section 29, of the State Constitution. This contention we shall consider first. It applies to both chapters. Section 29 of Article III provides for the style of "all laws of this State" and it refers throughout to "laws". There is a clear distinction between bills and laws. A bill is a proposal, which originates in either house of the General Assembly, and it may be amended or rejected in the other. It does not become a law until it has been passed in each house by a majority of the whole number of members elected. It is then presented to the Governor, and if he signs it, it becomes a law. He may veto it, and it may be passed over his veto, and thus become a law. Or, the Governor may fail to return the bill within six days after it is presented to him, and upon such failure, the bill will become a law, unless the Legislature has adjourned and prevented its return. All of this was recently discussed in the case of *Robey v. Broersma,* 181 Md. 325, beginning at page 339, 26 A. 2d 820, 29 A. 2d 827. Proposals, by the General Assembly, of amendments to the Constitution under Article XIV thereof, are by bills which have to be passed by three-fifths of all of the members elected to each of the two houses. These bills are then published once a week, for at least three months, before they are submitted to the voters. The votes cast, for or against the proposals, are returned to the Governor after the election, and if it appears to him that the majority are cast in favor, then the Governor, by his proclamation, declares the amendments adopted, and thereafter the amendments are part of the Constitution. The distinction between laws and bills proposing constitutional amendments was before this Court in the case of *Warfield v. Vandiver,* 101 Md. 78, 60 A. 538, 540. That case was the result of the refusal of the Governor to cause to be published a bill proposing a constitutional amendment which was not submitted to him for his

approval, and which he, therefore, claimed was not operative. The Court discussed the distinction between bills, which might become laws, and bills which proposed amendments to the Constitution. It said that a proposal of an amendment to the Constitution was not legislation, and that whatever legislation the Governor had a right to sign ceased, when signed by him, to be a bill, and became a law. The Court discussed Section 17 of Article II, of the Constitution, which is the section providing the duties of the Governor, with respect to bills which are intended to become laws and said, "The distinction between a *bill* and a *law* is carefully maintained throughout the foregoing section; and the plain and clear provisions of the section make it morally certain that it has no application to a proposed constitutional amendment." The provisions of Section 29 of Article III have likewise to do only with laws and not with bills. A bill proposing a law may originate in either of the two houses of the General Assembly, with one title, pass through that house, go to the other house, and there be amended, both as to its title and as to the body of the enactment. Its validity as a bill would not be affected by any discrepancies between its title and the body of the enactment, nor in the course of its progress through the Legislature is it required that the provisions of Section 29 apply to it. It is only when it has finally passed, and become a law in one of the methods above set out, that Section 29 becomes operative upon it. That section, therefore can never become operative upon a bill proposing a constitutional amendment, and such a bill is not subject to its provisions.

Petitioner also contended that Chapter 772 and Chapter 796 were both null and void because they were in conflict, and that the Court should so hold both proposals. It would seem to be obvious that this question was not before the Court. Neither of the proposals had been voted on, neither might be adopted by the voters, or one might be adopted, and the other might fail of adoption. The voters might conclude, as did the petitioner, that

the two were contradictory, and, therefore, they might determine to adopt the one they preferred, and not to adopt the other. The Court could not anticipate the action of the people. It would be assuming powers, far beyond the scope of those given to the judiciary, were it to refuse to permit the people to choose between two contradictory proposals (if they were contradictory), by declaring both proposals void, in advance of the adoption of either. If two contradictory provisions are placed in the Constitution, it might then become the duty of the Court to construe them and to determine what they mean. Until that occasion arises, the Court has here only to do with proposals. There is nothing in the Constitution to prevent the Legislature from making as many proposals as it chooses, and from making such proposals contradictory, in order to let the people choose between them. The only requirement is that the proposals shall be made in the manner prescribed by the Constitution, and this brings us to the last and main contention of the petitioner.

It is stated in 16 C. J. S., title "Constitutional Law", par. 7 a: "The constitutions of the several states respectively prescribe the method by which they may be amended or revised; and a particular constitution may be changed only by the method therein prescribed, and a failure to comply therewith renders an alleged amendment void" and further, "Provisions of a constitution regulating its own amendment, otherwise than by a convention, are not merely directory, but are mandatory; and a strict observance of every substantial requirement is essential to the validity of the proposed amendment". In support of these statements are cited cases from several jurisdictions, among them the case of *Brawner v. Supervisors of Elections,* 141 Md. 586, 119 A. 250, 252. In that case it was held that "* * * the people of the state from whom the Legislature itself derives its powers, having prescribed in the Constitution of the state the manner in which its laws shall be enacted, it is not competent for the Legislature to prescribe any other or

different way in which its laws may be enacted." The question before the Court there was whether an act providing a bonus for the residents of Maryland who served in the army and navy of the United States during the first World War, could be lawfully made to depend for its validity upon the affirmative vote of the people. The Court was dealing with the enactment of a law, and it held that such a reference to the people was not the proper way under the Constitution to enact a law. The same line of reasoning would prohibit the Legislature from proposing amendments to the Constitution in any other way than that prescribed by the Constitution. In *Cooley on Constitutional Limitations,* 8th Ed., vol. 1, pp. 84 and 85, is found the following statement in connection with the amendment of constitutions, "But the will of the people to this end can only be expressed in the legitimate modes by which such a body politic can act, and which must either be prescribed by the constitution whose revision or amendment is sought, or by an act of the legislative department of the State, which alone would be authorized to speak for the people upon this subject, and to point out a mode of the expression of their will in the absence of any provision for amendment or revision contained in the constitution itself." A number of cases from other states are cited in support of this statement.

We think it is a correct statement of the law that the provisions of the Constitution as to its own amendment are mandatory upon the Legislature, and that if they are not followed, a proposal not in conformity with them should not be submitted to the voters.

The pertinent part of the Constitution is found in Article XIV, Section I, which says: "The General Assembly may propose Amendments to this Constitution; provided that each Amendment shall be embraced in a separate Bill, embodying the Article or Section, as the same will stand when amended and passed by three-fifths of all the members elected to each of the two Houses, by yeas and nays, to be entered on the Journals

with the proposed Amendment. * * * When two or more amendments shall be submitted in manner aforesaid, to the voters of this State at the same election, they shall be so submitted as that each amendment shall be voted on separately." Petitioner contended that by Chapter 772 there was proposed more than one amendment, and that the two or more amendments submitted were not submitted in separate bills, so that they could be voted on separately. The reason given for holding that Chapter 772 contained more than one amendment is that it proposes to amend Section 5 of Part 1, of Article IV, of the Constitution, title "Judiciary Department", Section 14 of Part 2 of the same Article, and Section 21 of Part 3 of the same Article, and also to add a new section to the same article to be known as Section 18A of Part 2. Section 5 changes the time of election of judges from quadrennial elections to biennial general elections for representatives in Congress. Section 14 changes the entire judicial framework of this Court and the lower Courts, reducing the number of judges in this Court, establishing new appellate circuits, and providing for the relinquishment by the judges of this Court of those *nisi prius* duties they had as Judges of the circuits in which they were elected, and of which they were Chief Judges. Section 18A provides that the Chief Judge of this Court shall be the administrative head of the judicial system of the State, with certain duties in connection therewith, and the power, under certain circumstances, and subject to the rules and regulations this Court may make, to designate judges, both of the Court of Appeals and of the several circuits, to sit elsewhere, both in the *nisi prius* Courts and on this Court. Section 21 fixes the number of judges for each circuit, making certain changes to conform to the provisions of the other sections, and providing for the continuation of the orderly procedure of the administration of justice, after the changes made in the other sections shall go into effect. In each case the bill sets out in full the section as the same will stand when amended, and in the case of the

new section, sets this out in full. It does not set out the entire article as it would stand when amended, and it cannot be reasonably intended that this has to be done. The judiciary article of the Constitution occupies pages 91 to 119, both inclusive, in Flack's Annotated Code, and while some of this is taken up with annotations, it would be a practical impossibility to print the whole article on the ballots to be submitted to the voters, and its publication once a week for three months prior to the election would be prohibitive financially. It cannot be supposed that the framers of the Constitution intended this to be done, unless a very clear statement to that effect is found in the Constitution. We do not find such a statement. Section 1 of Article XIV, already quoted, does not say that each amendment shall be embraced in a bill *embodying the entire article as the latter will stand when amended.* The reasonable conclusion from its wording is that while each amendment shall be in a separate bill, *nothing else need be in it but the amendment.* If certain changed sections of an article are proposed as one amendment, it is only necessary to include those sections as amended, in the bill, and it is neither necessary nor proper to put all the other sections of the article which are not amended, in the bill with the amended sections. This conclusion is strengthened by an examination of the original draft of Article XIV, Section 1, as proposed in the Constitutional Convention of 1867. It will be found in the Proceedings of the Convention, on page 639, and also in *Perlman's Debates,* on page 271, as proposed by the Committee Respecting Future Amendments to the Constitution, headed by the late William P. Maulsby, a distinguished lawyer of Frederick County. Section 1, as thus proposed, reads as follows: "Any specific amendment or amendments to this Constitution may be proposed by the General Assembly, provided the same shall be by bill proposing a separate amendment which shall embody the *entire* article or section as the same will stand when amended". (The italics are ours.) It does not appear that any debate was held on this proposal on the

floor of the convention. It was referred to the Committee on Revision and Compilation. Certain amendments were made in the committee, these were reported to the convention, and the section was adopted as it now stands in the Constitution. *Perlman's Debates,* page 449. The significant change is that as the section was proposed, the bill proposing a separate amendment had to embody the *entire* article or section as the same would stand when amended. In the section adopted, the word "entire" is left out. The original proposal also authorized *specific* amendments, rather than amendments in general, and the leaving out of the word "specific", if it indicates anything at all, indicates a broadening of the power of the Legislature to determine what an amendment authorized by the section is. It is also a reasonable conclusion that the framers of the Constitution did not intend, if the Legislature desired to change two or more sections, that each section had to be placed in a separate amendment. Article XIV does not say so. The sections of the Constitution are interrelated. Many of them are dependent on others. For instance, in the sections of the judiciary article to be changed by the proposed amendment, Section 14 provides that the Court of Appeals shall be composed of the Chief Judges of the first seven of the several judicial circuits of the State, etc. To find out how these Chief Judges are named, it is necessary to look at Section 21. If the Legislature desired, as it did, to submit an amendment changing the composition of the Court of Appeals so that it would be composed, not of Chief Judges, but of specially elected Judges from newly created appellate circuits, it was necessary for it, not only to propose an amendment to Section 14, but also to propose an amendment to Section 21. This would, in reality, be only one general change, but if it had to be submitted by two separate proposals, one might be adopted, and the other not, with great consequent confusion and disorganization of the Courts. The Constitutional Convention must be presumed to have realized that this was so, since it divided the Constitution into these sections, which, as we have stated, are interrelated.

What it seems to us was intended, is that the word "amendment" used in Article XIV, Section 1, meant a proposal, of changes in a particular subject, such as in this case, the State judiciary. The Legislature was empowered in the first instance to determine what changes it considered advisable and to put these changes in one bill, this whether they were all in one section of the Constitution or whether they were in several sections, or whether they were not in the Constitution at all, and new sections had to be added. We cannot assume that the Legislature would propose an amendment, which might contain matters obviously not related, but if it did, then the Courts would have power to pass upon the proposal and to determine whether or not Article XIV had been followed. In the absence of clear violation, the judgment of the Legislature as to what is related and what is not related should be respected, and the Courts should not interfere. It does not seem to us, upon a careful examination of Chapter 772, that there are any of the proposals contained in it which are not related to the general subject matter. Therefore, we conclude that only one amendment is proposed by Chapter 772 and that that chapter submits an amendment in accordance with the provisions of Section 1 of Article XIV of the Constitution.

*It is for these reasons that we affirmed the order of the Court below.*