JOHN J. KUHN, Plaintiff, *v.* THOMAS J. CURRAN, as Secretary of State of the State of New York, Defendant.

Supreme Court, Special Term, Albany County, November 24, 1944.

*John W. Davis* and *Ferdinand I. Haber* for plaintiff.

*Nathaniel L. Goldstein, Attorney-General (Orrin G. Judd, Wendell P. Brown, John C. Crary, Jr.,* and *John R. Davison* of counsel), for defendant.

*Frederic White Shepard* for Nassau Taxpayers' League, *amicus curiæ.*

BERGAN, J. The complaint states that plaintiff is a resident taxpayer and a qualified elector of Nassau County and is a lawyer practicing in New York City. He sues the Secretary of State for judgment declaring unconstitutional chapter 617 of the Laws of 1944. This statute creates the Tenth Judicial District in the counties of Nassau and Suffolk.

The complaint, in summary, alleges that the statute will increase the tax burden in Nassau County; that it will cast doubt upon the area of election of the next vacancy in the Supreme Court in the Second District in 1945; that it will result in uncertainty as to the judicial acts performed in the areas of the new and old districts, and in fiscal confusion, and that plaintiff as a lawyer will be inconvenienced in making motions and in calendar practice in Nassau County cases. It alleges that the Secretary of State intends to take the appropriate steps in 1945 to carry out the provisions of the act.

All this pleads no justiciable controversy between plaintiff and the Secretary of State which would move the court to adjudicate the invalidity of the statute. No dispute affecting any special right of the plaintiff is shown with the Secretary of State. Indeed no controversy of any kind is shown. Plaintiff as a private citizen dissents from the view taken by the Legislature that it acted within its constitutional frame of power in the enactment of the statute. The judicial part of the State government has no legislative power, no supervisory duties over legislation and no privilege of advising citizens and the Legislature upon constitutional points.

The hard core of judicial power, and the only function it performs in the government of the State is in giving judgments upon disputed rights; in setting controversy at rest. Its origin was in the necessity of society that disputed rights be settled and that quarrels have an orderly end.

It was soon discovered in the practice of living in the United States under written National and State Constitutions, that if the written Constitution was to be a workable instrument of government it had to be interpreted by someone not involved in the use of the disputed power. The courts assumed to interpret the written word and so they assumed also a larger participation in government than was customary for the courts in England or in any other large State. But the courts formulated no affirmative public policy. Their public function was a brake upon power. They stopped use of power in excess of constitutional delegation; they kept the legislative and administrative branches of the government within the written constitutional words as they themselves interpreted the words.

It has been noted about our system that the courts would assume to stop governmental action upon the ground of unconstitutionality, but could not assume the corollary of responsibility for the formulation of necessary alternative positive action. The recognized right of final interpretation of law is true " sovereign " power. Still the courts never felt themselves equipped to become a government and particularly they conceived themselves in the traditional judicial sense to be concerned primarily with adjudicating disputes and only incidentally with constitutional interpretation where it was necessary to settle someone's rights in dispute. Lacking a dispute where rights were at stake — a " justiciable controversy " — the judges conceived their views on constitutional questions to be entitled to no greater acceptance than the views of other citizens.

A difference of opinion between a citizen and the officers of the government does not present a dispute for judicial adjudication unless the disputant has some special and distinct interest in the controversy beyond that of the general citizen. See DENIO, J., in *Doolittle* v. *Supervisors of Broome County* (18 N. Y. 155) as further amplified in his opinion in *Roosevelt* v. *Draper* (23 N. Y. 318).

These cases turned upon the principle at common law that the remedy for public wrongs was in the hands of the State in its political character to prosecute or correct and that one of a body of citizens affected generally could not move a court to correct the public wrong unless he showed his rights or property had been specially affected. (*Doolittle* v. *Supervisors of Broome County, supra,* p. 159.) As these cases demonstrate, this limitation formerly applied to local as well as State officers, but as to local officers taxpayers have been provided by statute with a

sufficient interest to maintain an action to restrain the waste of public funds in "taxpayers' actions". This is in aid of the local government in its property rights and has no application to State affairs. (*Matter of Reynolds,* 202 N. Y. 430, 440.) Cases like *Rathbone* v. *Wirth* (150 N. Y. 459) and *Williams* v. *Boynton* (147 N. Y. 426) arose under the provisions authorizing a taxpayer's action against local authorities.

In an action in equity maintained by a private citizen against the Secretary of State and the Boards of Elections of the several counties for an injunction restraining the setting up of machinery for the election of delegates to the 1915 Constitutional Convention upon the ground the statute providing for the election was invalid, the court held plainly that such an action did not lie at the instance of a private citizen. (*Schieffelin* v. *Komfort,* 212 N. Y. 520, 533.) Indeed the jurisdiction of the court to pass upon the constitutionality of a statute unless special and personal rights are affected was doubted. (See, also, *Matter of Reynolds, supra.*)

The private citizen, showing no special rights in the subject, has been held to have a sufficient interest in compelling the performance of a duty imposed by law on a public officer to maintain a mandamus proceeding to this end. He might move to compel an officer to remove unlawful obstructions on the public streets. (*People ex rel. Pumpyansky* v. *Keating,* 168 N. Y. 390; *Chittenden* v. *Wurster,* 152 N. Y. 345.) He might move to compel the State board of canvassers to follow the mandatory provisions of the election statute. (*People ex rel. Daley et al.* v. *Rice et al.,* 129 N. Y. 449.) He might move to compel the State civil service authorities to follow a constitutional mandate. (*Matter of Andresen* v. *Rice,* 277 N. Y. 271.)

The theory was that in mandamus the compulsion was exercised at the instance of the People as the sovereign power having an interest in seeing to it that the law was carried out in public matters, and the People were moved to act at the suggestion or relation of one of the public. (See *The People* v. *Collins,* 19 Wend. 56, 65.) The theory persisted though the name and form of the remedy changed. Thus *Matter of McCabe* v. *Voorhis* (243 N. Y. 401) and *Matter of Koenig* v. *Flynn* (258 N. Y. 292) were, in form at least, proceedings in mandamus, though it must be conceded each used the proceeding as a mechanism of declaring the invalidity of legislative action rather than compulsion to perform a duty in the true sense. In *People ex rel. Hotchkiss* v. *Smith* (206 N. Y. 231) the form of remedy was mandamus, but also the petitioners had a special interest in the subject matter.

The complaint does not show the existence of any rights or jural relations between plaintiff and the Secretary of State to authorize a declaration of rights between them on the constitutional question sought to be raised. The facts alleged give the court no jurisdiction. (See *James* v. *Alderton Dock Yards*, 256 N. Y. 298.)

It cannot be supposed that when any citizen reaches the opinion that a law is unconstitutional he may, without any actual controversy and before the law begins to become operative, sue a State officer for a declaration of invalidity. This would amount to insinuation of the views of the judicial branch of the government into the legislative field. The question of the constitutionality of the statute cannot be reached at this time by declaratory judgment. It must be reached by some other remedy than this.

The complaint is dismissed on the sole ground that the remedy sought is not presently available in this form.* No costs.

Submit decision and judgment.

---

\* See for proceeding in the nature of mandamus under article 78 of the Civil Practice Act between the same parties, *Matter of Kuhn* v. *Curran*, 183 Misc. 942, revd. with opinion 294 N. Y. 207, where the Court of Appeals granted the relief sought but expressly refused to pass upon the appropriateness of the remedy chosen.— [REP.