In the Matter of JOHN J. KUHN, Petitioner, against THOMAS J. CURRAN, as Secretary of State of the State of New York, Respondent.■

Supreme Court, Special Term, Albany County, January 16, 1945.

*John W. Davis* and *Ferdinand I. Haber* for petitioner.

*Frederic White Shepard* for Nassau Taxpayers League, *amicus curiæ*.

*Nathaniel L. Goldstein, Attorney-General (Orrin G. Judd, Wendell P. Brown, John C. Crary, Jr.,* and *John R. Davison* of counsel), for respondent.

BERGAN, J. The proceeding is in the nature of mandamus against the Secretary of State to require him to disregard as unconstitutional the statute of 1944 (ch. 617) creating the Tenth Judicial District. It is pleaded in the petition, and not denied by the Secretary of State, that in the current year, possibly as early as May 5th, he will certify that a justice of the Supreme Court is to be elected in the new Tenth Judicial District. There is no issue of fact upon this essential point. An important public question is raised. It requires an adjudication well in advance of the election and of the preliminary steps for the election. In somewhat similar circumstances, mandamus has been treated as the appropriate remedy. (*Matter of Reynolds*, 202 N. Y. 430, 442; see, also, *Matter of McCabe* v. *Voorhis*, 243 N. Y. 401; *Matter of Koenig* v. *Flynn*, 258 N. Y. 292; *Matter of Andresen* v. *Rice*, 277 N. Y. 271.)

The power of the Legislature to add to the State's system of judicial districts a new district turns on the way a single word is read. The Constitution allows the Legislature to " alter " the districts. The meaning to be given to this word as it appears in the setting of its immediate context in the Constitution, and in the larger context of the history and development of the judicial system, controls the decision to be given in this case. The Legislature itself has evaluated the word broadly in favor of a power to create a new district and has acted upon its interpretation by establishing the Tenth District.

It is the duty of the Legislature, as well as the court, to construe the Constitution. That the legislative interpretation is not the final one was almost an accident of American constitutional development. The Legislature's view in the interpretation of its own powers especially is entitled to respect. The legislative function constantly touches upon constitutional grants and limitations of power and requires the Constitution to be read and understood side by side with contemplated laws.

It takes a pretty plain case of legislative misapprehension of constitutional language to justify a court's giving judgment that a statute is not to be enforced because it is unconstitutional. Such a judgment will usually be withheld in a fairly debatable field of interpretation, even though the court might read the language differently.

A good argument can be made that the word " alter " as it is used in the Constitution relating to the judicial districts should be interpreted in the narrowest sense to mean only the recasting of district lines and not the establishment of new districts. Petitioner cites the method employed in the amend-

ment of 1905, which, among other things, expressly authorized the creation of a new judicial district from part of the former Second District, to indicate that it was then felt necessary, or at least advisable, to have the power plainly stated.

The veto messages of three governors who disapproved legislative acts creating new judicial districts are cited in support of petitioner's construction. But these messages merely indicate that two of the branches of the government, the executive and legislative, did not share the same view upon a point of constitutional interpretation.

The argument against the power to create a district is at least balanced by the logic of the more liberal interpretation made by the Legislature. If the argument about what a word means comes around to an equilibrium few lawyers would doubt that the legislative view would prevail. To say this is to say that the statute is valid. It could be demonstrated further, I think, that the weight of the argument supports the statute.

Definition of a word at best is an approximation of meaning. It is an evaluation of a static symbol which has true significance only when it is in use as an expression of thought. Therefore meaning is in large part to be learned from actual expression. There is an interdependence between definition and context. Hence the frequent necessity in aid of dictionary definitions to place words in some context. In constitutional interpretation the steps by which the words came to form the text are important as well as the meaning suggested by reading the text itself. History itself is often the true context of constitutional expression.

The scheme of the judicial districts, as well as the structure of the present Supreme Court were the work of the Convention of 1846. The Constitution of 1846 (art. VI, § 4) provided for eight districts which were to be about equal in population except New York City, and it provided the number of justices in each district outside of that city. It allowed the Legislature to " reorganize " the judicial districts after a census enumeration (art. VI, § 16).

Authorization was given to the Legislature to increase or diminish the number of districts, but if the reorganization took that form no more than one district could be added or subtracted at one time. Therefore, when judicial districts were first established, the Legislature had an express grant of power to do what is here challenged, to add a district if in its judgment a change in population shown by a census warranted a new district.

The judiciary article of the Constitution of 1846 was quite extensively revised by the Convention of 1867, and, separately submitted, the revision was adopted in 1869. The existing judicial districts were continued " until changed pursuant to this section." (N. Y. Const. [1846, as amd.], art. VI, § 6.) For the first time the word " alter " was used. " The Legislature may ' alter the districts ' without increasing the number." It is important to notice that in this initial use of the expression " alter the districts," the draftsman of that sentence felt it necessary immediately to add " without increasing the number."

It seems rather probable that it was felt by the Convention the word " alter " would admit the right to increase or diminish unless there were added an express denial of one or both such powers. The whole sentence thus throws light upon the contemporaneous understanding of the meaning of that word in that sentence.

For twenty-five years (1869 to 1894) the sentence stood in this form. The thought that the draftsmen of 1867 felt the word " alter " needed a denial of the power to create a district, to prevent at least the possible use of such power, was crystalized into the constitutional and legal thinking of the State for a long time and must have been fully apparent to the Convention of 1894. That Convention dealt with a sentence written by other men who had felt the need of limiting the effect of their expression. The Convention did not recast this part of the sentence or employ different words, in dealing with the subject. It merely stripped from the sentence the words " without increasing the number " and so it presently reads (N. Y. Const., art. VI, § 1). It is very hard to escape the result that the Convention of 1894 intended to remove the prohibition upon creating new districts from the expression " alter the judicial districts."

This view seems to be reinforced by a reference to the following section of the Constitution of 1894 dealing with the judicial departments. In respect of the departments, the Legislature " may alter the judicial departments, but without increasing the number thereof " (N. Y. Const., art. VI, § 2). This seems to dispose of any possibility that the Convention of 1894 may have regarded the word alter as so clearly self-limiting as not to need the restriction against increasing judicial districts, because in allowing the Legislature to " alter " the judicial departments it was careful to add the condition " without increasing the number " which it had stricken out of the sentence dealing with the judicial districts. And there has

subsequently been added to the word "alter" in dealing with the departments the words "the boundaries of" apparently to make additionally clear the constitutional intent that in this context "alter" is to have a limited meaning.

The power to "alter the judicial districts" does not refer to boundaries and it is not merely a power to alter "any" judicial district. It is a power that relates to a system of districts in its totality. It is the entity "judicial districts" that may be altered, and this would necessarily include the addition or subtraction of units to the entity. (See, for instance, the first definition of "alter" appearing in 3 C. J. S., p. 898 as the right "To add to or diminish.") The legislative power to deal with judicial districts has from the beginning been related to changes in population shown in census reports. The power should be liberally and not rigidly construed, if such a construction is an admissible one, so that a change in population could be treated by the establishment of a new district instead of by an extension of district lines, if in the legislative judgment a new district offered a more feasible solution than the remolding of existing districts.

Under the pleaded facts as distinguished from legal conclusions the only questions that are presently in controversy or that can be adjudicated are whether the act creating the district is valid and whether the office of a justice residing in the new district whose term expires is to be filled in that district. Whether the provision of the act attempting to transfer justices whose terms have not expired to the new district is valid is not necessary to this controversy and is not decided.

A final order in favor of the respondent dismissing the proceeding on the merits, without costs, may be submitted.