HENRY A. BULL, Plaintiff, *v.* HERMAN T. STICHMAN et al., Constituting the Emergency Housing Joint Board, et al., Defendants.

Supreme Court, Special Term, Albany County, July 29, 1947.

*Henry A. Bull,* plaintiff in person.

*Nathaniel L. Goldstein, Attorney-General (Wendell P. Brown* and *Henry S. Manley* of counsel), for Herman T. Stichman and others, defendants.

*Charles J. Wick* for Canisius College of Buffalo, defendant.

*Franklin R. Brown* for Metzger Construction Corporation, defendant.

BOOKSTEIN, J. Recognizing the existence of a public emergency due to an insufficient supply of dwelling accommodations for returning veterans of World War II and their families and others, the Legislature of this State in January, 1946, enacted and Governor Thomas E. Dewey signed a bill designed to meet the situation. The bill became chapter 3 of the Laws of 1946, effective January 29, 1946, and added a new article, to wit, article IX-A, to the Public Housing Law. It created an Emergency Housing Joint Board and prescribed their duties and powers and made detailed provisions for the purpose of alleviating the emergency situation.

At or about the same time, the Governor called together the Presidents of all of the colleges and universities of this State in an endeavor to meet a serious problem which he envisioned. The problem, of course, was twofold, viz., to provide facilities for education and also for housing, for returning veterans at the higher institutions of learning. The State Commissioner of Housing conferred with the Executive Committee of the Association of Colleges and Universities of the State of New York. As a result of their deliberations, the Governor recommended that the powers of the Emergency Housing Joint Board, created by chapter 3 of the Laws of 1946, be enlarged to permit it to aid the universities in the creation and enlargement of certain facilities of the colleges and universities of this State in order that the problem of education for veterans and their housing, while in attendance at college, might be met.

On March 20, 1946, the Governor sent a message to the Legislature in which he said, '' The return of great numbers of veterans who interrupted their schooling to serve the Nation in time of war will place unprecedented demands upon the educational facilities of this State.''

Acting upon the recommendation of the Governor, the Legislature enacted '' An Act to amend the education law, in relation to contracts for the instruction in higher education of veterans of World War II and other students '' and '' AN ACT to amend the public housing law, in relation to providing buildings, facilities '' etc. '' as an aid to education.''

On April 4, 1946, the Governor approved both measures. One of these acts became chapter 681 of the Laws of 1946 and amended chapter 3 of the Laws of 1946 by adding a new section 200-o to the Public Housing Law and by amending section 203 of that Law. The other became chapter 680 of the Laws of 1946 and amended the Education Law by the addition thereto of a new section 30. Thus, chapter 3 of the Laws of 1946, as amended by chapter 681 of the Laws of 1946, and the amendment of the Education Law by chapter 680 of the Laws of 1946, encompassed a completely integrated program, carrying into effect the recommendations of the Governor, arrived at after joint study by the State Housing Commissioner and the representatives of the Colleges and Universities of the State.

Indeed in the enactment of chapter 681 of the Laws of 1946, the Legislature declared the existence of an emergency with reference to the educational facilities and housing accommodations of higher educational institutions and these laws were designed to meet that emergency. That such emergency in

fact existed, as well as being attested by legislative declaration, is only too well known to a vast number of the parents of this State whose sons and daughters have encountered such great difficulty in obtaining admission to colleges and universities.

By section 203 of the Public Housing Law, as amended by chapter 681 of the Laws of 1946, the sum of $35,000,000 was appropriated from the Postwar Reconstruction Fund to provide, among other matters, for emergency educational facilities. By section 200-d of the Public Housing Law, dealing with emergency public housing entirely unrelated to education, it was provided that the State might acquire property to effect the purposes of the act either by purchase, lease or license; by section 200-m thereof, title to all improvements etc. made by the State on real property acquired by the State in any of the manners aforesaid, is to remain in the state, which can remove same, upon expiration of the emergency; and by subdivision 6 of section 200-o dealing with the subject of meeting the emergency in educational facilities, all of the provisions of article IX-A, relating to emergency housing, including those governing the acquisition of property, work of conversion, operation and management and retention of title to improvements, etc. apply with equal force and effect to classrooms, laboratories, libraries, offices, restaurants, and other facilities incident to the operation of an educational institution, such as a college or university.

The defendant, The Canisius College of Buffalo, New York, is an educational institution operating under a charter granted by the Board of Regents of the University of the State of New York in the year 1883. While it is not clear from the papers submitted, it is clear from the oral argument that the defendant, Canisius College, is a Catholic College operated by the Jesuit Order of the Roman Catholic Church. Located near the property of Canisius College is a property known as the Sisters Hospital owned by the Trustees of the Buffalo Hospital of the Sisters of Charity. This, too, is a Catholic institution, but its use as a hospital has been abandoned and the defendant, The Canisius College, has made a contract to acquire the title of said property from the Trustees of the Buffalo Hospital of the Sisters of Charity.

On or about May 5, 1947, the Emergency Housing Board, acting under the provisions of law already referred to, made an allocation to the defendant, The Canisius College of Buffalo, New York, of $128,000 to be made available for remodeling and converting the Sisters of Charity Hospital to provide classroom facilities. The purpose of this, of course, is to convert the

hospital building for the extension of the facilities of Canisius College, so as to enable it to provide its educational facilities for a large number of prospective students, which its present facilities cannot accommodate. The moneys thus allocated were to be employed for the necessary labor and material to provide classrooms, a cafeteria, etc.

The defendant, Metzger Construction Corporation, is the corporation which has been retained to do the necessary construction work, and was engaged therein in an endeavor to have the facilities ready by October 1, 1947, which date is two weeks later than the normal opening date of the fall term, when this action was instituted.

The plaintiff has instituted this action to obtain a judgment declaring that the allocation thus made to Canisius College is in violation of the First Amendment of the Constitution of the United States and of section 4 of article XI of the New York State Constitution, and in that action plaintiff now moves for a temporary injunction, restraining the appropriate State officials from paying the contractor for any work done on the project, pending the determination of his action. The mere threat of an injunction, implicit in the application therefor, has caused the contractor to cease work.

Plaintiff has brought this action in Erie County and the defendants contend that his motion for a temporary injunction should be denied by this court, because Erie County is in the Eighth Judicial District and subdivision 2 of rule 63 of the Rules of Civil Practice provides as follows: '' Where the action is triable in the first or the eighth judicial districts, the motion must be made in the district where the action is triable * * * ''

Were this an ordinary action against private individuals, the defendants' contention in this regard would be sustained.

However, section 879 of the Civil Practice Act provides as follows: '' Where a duty is imposed by statute upon a state officer or board of state officers, an injunction order to restrain him or them, or a person employed by him or them, from the performance of that duty, or to prevent the execution of the statute, shall not be granted except by the supreme court at a term thereof sitting in the department in which the officer or board is located, or the duty is required to be performed * * * ''

In this case, the defendants, public officers and public board, are located at the seat of government in the city of Albany, New York, which is in the Third Judicial Department, and accord-

ingly the application for an order for a temporary injunction is properly made at a Special Term in the Third Judicial District, which is in the Third Judicial Department. Indeed, it cannot be made elsewhere. In other words, in a situation to which section 879 of the Civil Practice Act is applicable, rule 63 must be deemed to be superseded thereby. So, this action for a declaratory judgment may be brought in Erie County, but a motion for a temporary injunction therein must be brought in the Third Judicial Department. (See *Lawson Co., Inc.,* v. *Browne,* 266 App. Div. 183.) This court does not deem the decision in *Dairy Sealed, Inc.,* v. *Ten Eyck* (248 App. Div. 352) as holding to the contrary.

Upon the return of the order to show cause herein, defendants verbally moved to dismiss plaintiff's complaint on the ground that the complaint does not state facts sufficient to constitute a cause of action in that it fails to show facts which give to this plaintiff a cause of action, such as this.

The contention is that the plaintiff, as a mere citizen and taxpayer, cannot maintain this action for a declaratory judgment.

That contention is amply sustained by authority. (See *Judd* v. *Board of Education,* 278 N. Y. 200, 203, 218; *Schieffelin* v. *Komfort,* 212 N. Y. 520, 526–528; *New York League For Separation of Church and State* v. *Graves,* 170 Misc. 196, 198; *Matter of Goldstein* v. *State Commission of Correction,* 182 Misc. 695, 697; *Kuhn* v. *Curran,* 184 Misc. 788; *Alabama State Federation of Labor* v. *McAdory,* 325 U. S. 450, 461–463; *Ex Parte Levitt,* 302 U. S. 633, 634.)

In *Schieffelin* v. *Komfort* (*supra*) the Court of Appeals said: " The clear weight of authority in this state is against the alleged power and authority of the courts to pass upon the constitutionality of a statute except in an action or proceeding in behalf of a person whose special, peculiar personal rights are affected thereby." (P. 533.)

" We repeat that the courts of this state have denied the right of a citizen and taxpayer to bring before the court for review the acts of another department of government simply because he is one of many such citizens and taxpayers." (P. 537.)

" For more than a century it has been the settled law of this State that where no direct individual injury peculiar to plaintiff is shown, no action against a public officer can be maintained by a citizen on the ground that his interests as a member of the State have been impaired or disturbed, since no one can assume the role of champion of the community. * * *

It was to change the rule, so far as it related to actions against municipal corporations or officers thereof, that the maintenance of a taxpayer's action was authorized by statute.'' (*New York League For Separation of Church and State* v. *Graves*, 170 Misc. 196, 198, 199, *supra*.)

The statute referred to in the foregoing quotations is section 51 of the General Municipal Law.

The rule is thus expressed in *Schieffelin* v. *Komfort* (212 N. Y. 520, 530, *supra*): '' The rights to be affected must be personal as distinguished from the rights in common with the great body of people.''

As early as 1858, in the case of *Doolittle* v. *Supervisors of Broome County* (18 N. Y. 155, 163) our Court of Appeals said: '' No private person or number of persons can assume to be the champions of the community, and in its behalf challenge the public officers to meet them in the courts of justice to defend their official acts.'' (To the same effect, see *Matter of Goldstein* v. *State Commission of Correction*, 182 Misc. 695, *supra; Kuhn* v. *Curran*, 184 Misc. 788, *supra*.)

It is significant to note that in *Kuhn* v. *Curran* (184 Misc. 788, *supra*) the action, in which the complaint was dismissed, was, as here, for a declaratory judgment, and in dismissing the complaint, the court intimated the possibility that a proceeding in the nature of a mandamus might lie. Kuhn, apparently acting upon such intimation, then instituted a proceeding in the nature of mandamus and the decision of the court in that proceeding dismissed same, upon the merits, as reported in 183 Misc. 942, which determination was reversed. by the Court of Appeals in 294 N. Y. 207. However, no question was raised by any party as to the right of the petitioner in that proceeding to maintain it and the Court of Appeals took the precaution to say (294 N. Y. 207, 213): '' we do not pause to consider whether the question is presented in appropriate proceedings '' and the Official Reporter has taken the precaution in the official reports to cause a footnote to be printed in the report of *Kuhn* v. *Curran* (184 Misc. 788, 792) calling specific attention to the fact that while the Court of Appeals granted the relief sought in *Matter of Kuhn* v. *Curran* (183 Misc. 942, revd. 294 N. Y. 207) that court expressly refused to pass upon the appropriateness of the remedy chosen.

In *Judd* v. *Board of Education* (278 N. Y. 200, *supra*) the action was one against a municipal corporation as authorized by section 51 of the General Municipal Law. See opinion in that case at pages 203 and 218. (See, also, *Ford* v. *O'Shea*, 136 Misc. 921, affd. 228 App. Div. 772.)

As stated by the Court of Appeals in *Schieffelin* v. *Komfort* (212 N. Y. 520, 537), " the courts of this state have denied the right of a citizen and taxpayer to bring before the court for review the acts of another department of government simply because he is one of many such citizens and taxpayers."

Accordingly, this court is of the opinion that the complaint fails to state facts sufficient to constitute a cause of action.

In view of the conclusion reached, it is neither necessary nor proper to consider or pass upon the question of the constitutionality of the allocation of funds complained of.

However, this court is precluded from granting the motion to dismiss the complaint by technical barriers. In the first place, the motion to dismiss was a verbal notice made upon the argument of plaintiff's motion for a temporary injunction. No notice of motion or order to show cause was served.

In the second place, since the venue of this action is properly in Erie County, vnder rule 63 of the Rules of Civil Practice, the motion to dismiss the complaint is required to be made in the Eighth Judicial District. While section 879 of the Civil Practice Act authorized and, indeed, required plaintiff to make his motion for a temporary injunction in the Third Judicial Department, despite the provisions of rule 63 of the Rules of Civil Practice, there is no similar provision of the Civil Practice Act or the Rules of Civil Practice, exempting the defendants' motion to dismiss the complaint from the operation of rule 63 of the general Rules of Practice.

Accordingly, then, this motion for a temporary injunction is denied, with costs and defendants' motion to dismiss the complaint on the grounds that the complaint does not state facts sufficient to constitute a cause of action is denied, only because this Special Term cannot grant the same, without prejudice to the right of the defendants to make a motion for that relief in the Eighth Judicial District.*

Submit order accordingly.