MARYLAND-NATIONAL CAPITAL PARK AND PLANNING COMMISSION *v.* RANDALL, SECRETARY OF STATE

[No. 150, October Term, 1955.]

*Decided, per curiam, January 12, 1956.*

*Opinion filed February 8, 1956.*

20

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*J. Bond Smith* and *H. Warren Buckler, Jr.,* with whom was *Joe M. Kyle* on the brief, for the appellant.

*Stedman Prescott, Jr., Assistant Attorney General,* with whom was *C. Ferdinand Sybert, Attorney General,* on the brief, for the appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court for Montgomery County dismissing the Petition in a Special Case Stated, brought under Code, 1951, Article 16, Sections 238 and 239, hereinafter referred to as the Petition. This case was brought by the Maryland-National Capital Park and Planning Commission, plaintiff, appellant, an administrative agency of the State of Maryland and a public body corporate created by Chapter 448 of the Laws of Maryland, 1927, against Blanchard Randall, Secretary of State of Maryland, defendant, appellee.

The Petition states that the General Assembly of Maryland in its 1955 session enacted House Bill 505. The

Governor of Maryland vetoed this Bill after the adjournment of the Legislature. Article II, Section 17, of the Maryland Constitution requires that the said Bill be returned to the House in which it originated, immediately after said House shall have organized at the next regular or special session of the General Assembly. The Petition alleges that the Bill probably will be passed by the General Assembly over the Governor's veto. It asks the chancellor to decide nine questions of law arising from the enactment of House Bill 505 by the General Assembly at its 1955 session and before its return to the next regular or special session.

Appellant contends that said Bill, if passed over the Governor's veto, will be void and a nullity and that the chancellor has jurisdiction at this stage of the legislation to take affirmative action to so declare it. It further asks that a decree be entered either enjoining and prohibiting the Secretary of State from transmitting said House Bill 505 to the House of Delegates of Maryland or declaring said Bill void in whole or in part or deciding that said Bill is regular and valid in all respects, and that the decree contain such other provisions as may be proper in the premises.

The chancellor was of opinion that she was without power to interfere with the duty of the Secretary of State to return the vetoed Bill to the General Assembly as required by the Constitution and, by order, on December 13, 1955, dismissed the Petition. From that order appellant appeals.

The Constitution of Maryland, Article II, Section 17, *supra,* provides in part as follows: "Any bill which is vetoed by the Governor following the adjournment of the General Assembly, or any bill which fails to become a law by reason of not having been signed by the Governor following the adjournment of the General Assembly, shall be returned to the House in which it originated, immediately after said House shall have organized at the next regular or special session of the General Assembly. Said bill may then be reconsidered according to

the procedure specified hereinabove. If the bill is passed over the veto of the Governor, it shall take effect on June 1 following, unless the bill is an emergency measure to take effect when passed."

The primary question before us in this case is whether the courts have jurisdiction at this stage of the Bill to determine the questions raised by the Petition.

The appellant relies strongly on the case of *Pierce v. Society of Sisters of Holy Names & Hill Academy,* 268 U. S. 510, 69 L. Ed. 1070. That case involved an Oregon statute requiring all children in that State between the ages of eight and sixteen, with certain minor exceptions, to attend public schools. Two private corporations, one of which operated a parochial school and the other a military school for children within the ages covered by the statute, brought suit to enjoin the Governor, the Attorney General of Oregon, and the District Attorney for the county in which both schools were located, from enforcing the statute. That statute had been adopted under the initiative provision of the Oregon Constitution by the voters of Oregon on November 7, 1922. The effective date was September 1, 1926, some years after the suits were filed and fifteen months after the case was decided by the Supreme Court of the United States. Injunctions were issued as prayed and affirmed by the Supreme Court because the statute would be unconstitutional when it became effective. There, the proceedings for the injunction were brought after the act had been adopted and all necessary legislative action completed, which is not the case here.

In some States it has been held that the process of passage is still legislative whether the bill and constitutional amendments are passed by a referendum to the vote of the people or by the State Legislature, and that, therefore, the courts have no authority to enjoin executive officers from placing such bills and constitutional amendments on the ballot to be voted on by the people. *People ex rel. O'Reilly v. Mills,* 30 Colo. 262, 70 P. 322, 323; *State v. Kozer,* (Oregon), 270 P. 513. As pointed

out by the appellee, it was said in *Bowe v. Secretary of the Commonwealth,* 320 Mass. 230, 247, 69 N. E. 2d 115, 127: "The people acting by means of the initiative, like the General Court, may enact measures that violate the fundamental and supreme law of the Constitution and that consequently have no force or effect. But no court can interfere with the process of legislation, either by the General Court or by the people, before it is completed, to prevent the possible enactment of an unconstitutional measure. *Horton v. Attorney General,* 269 Mass. 503, 514, 169 N. E. 552; *Opinion of the Justices,* 309 Mass. 571, 580, 34 N. E. 2d 527; *Prentis v. Atlantic Coast Line Co.,* 211 U. S. 210, 228, 230, 29 S. Ct. 67, 53 L. Ed. 150. The judiciary is barred from the legislative field just as it is from the executive."

In *Schneider v. Lansdale,* 191 Md. 317, 61 A. 2d 671, strongly relied on by the appellant, a suit was instituted to enjoin the Board of Supervisors of Elections of Montgomery County from submitting to the voters of that County at the next election a charter proposed under Article XIA of the Constitution of this State. In that case all legislative action had been completed and the only step necessary to make the charter effective was approval by the voters. In that case it was said by Chief Judge Marbury: "Before we come to the substantive constitutional point, we have before us the contention made by the defendants that the courts cannot interfere with the legislative processes, and that enjoining the submission to the voters of a proposed charter is such interference. Many authorities are cited in support of this view, and they are impressive and persuasive. But in this State we have actually passed upon the validity of proposed constitutional or charter amendments, and have enjoined submission of an invalid charter amendment. *Williams v. Broening,* 135 Md. 226, 108 A. 781; *Jones v. Broening,* 135 Md. 237, 108 A. 785; *Hillman v. Stockett,* 183 Md. 641, 39 A. 2d 803. In the cases cited there were presented specific questions, which would necessarily have arisen after approval by the vot-

ers and which could just as conveniently be decided before submission as afterwards. In *Hillman v. Stockett, supra,* there was also presented another question, which might never arise and could never arise except in the event of adoption of both of two proposed amendments. This contingent and possibly moot question, the court declined to pass upon before submission to the voters. We think such a question is now presented as the court should consider in advance of submission." The cases of *Williams v. Broening, supra; Jones v. Broening, supra; Hillman v. Stockett, supra;* and *Schneider v. Lansdale, supra,* all involved the submission of charters or constitutional amendments to the voters. Those cases, and *Soper v. Jones,* 171 Md. 643, 187 A. 833, also held that the courts may enjoin executive officers in the performance of ministerial duties. However, in the instant case Article II, Section 17, of the Maryland Constitution, *supra,* specifically requires that the Bill here be returned to the Legislature. This is mandatory and a constitutional duty and part of the legislative process. See also *People ex rel. O'Reilly v. Mills, supra.*

In *Warfield v. Vandiver,* 101 Md. 78, 60 A. 538, this Court held that a bill proposing an amendment to the Constitution of Maryland does not require the signature and approval of the Governor and that the Governor may be required by a writ of *mandamus* to give notice of the pendency of such a proposal for submission for approval or rejection by the voters, as required by Article XIV of the Maryland Constitution. It was said in that case at page 113 that the proposal of amendments to the Constitution by the General Assembly was "not legislation". It therefore appears that the holding in *Schneider v. Lansdale, supra,* so heavily relied on by the appellant, that the courts may enjoin the submission of a charter to the voters for approval was not a holding that the courts may enjoin legislation, by merely forbidding the submission of legislation to the vote of the people.

It is said in American Jurisprudence, Volume 11, page 902, Section 200, in part as follows: "Judicial Interfer-

ence with Legislature.—The principle is well established that the courts will not assume a jurisdiction in any case which will amount to an interference by the judicial department with the legislature since each department is equally independent within the powers conferred upon it by the Constitution. * * * The judiciary, furthermore, cannot interfere with the legislative process of enacting the laws. During the process of legislation in any mode, the work of the lawmakers is not subject to judicial arrest or control or open to judicial inquiry. Hence, it is not within the power of the judiciary to enjoin the legislature from passing a proposed statute or compel it by *mandamus* to do so." *Schieffelin v. Komfort,* 212 N. Y. 520, 106 N. E. 675, L. R. A. 1915D, 485; *French v. Senate,* 146 Cal. 604, 80 P. 1031, 69 L. R. A. 556, 2 Ann. Cas. 756.

In *Goodland v. Zimmerman,* 243 Wis. 459, 10 N. W. 2d 180, the acting Governor of Wisconsin sought to enjoin the Secretary of State from publishing an act enacted by the Legislature, subsequently vetoed by the acting Governor and then passed over the acting Governor's veto. The constitution of Wisconsin required the Secretary of State to publish such a law. The Wisconsin court held that they were dealing with a bill that had not yet become a law and there was no such thing as an unconstitutional bill. The court could not deal with the question constitutionally until a law had been duly enacted and some person had been deprived of his constitutional rights by its operation. The judicial department had no jurisdiction or right to interfere with the legislative process which was committed by the constitution entirely to the Legislature itself. The Court there used the following language: "Under our constitution the judicial and legislative departments are distinct, independent, and co-ordinate branches of the government. Neither branch enjoys all the powers of sovereignty, but each is supreme in that branch of sovereignty which properly belongs to its department. Neither department should so act as to embarrass the other in the discharge

of its respective functions. That was the scheme and thought of the people in setting up the form of government under which we exist." To the same effect see *State v. Kozer,* (Oregon), *supra,* 515, and *Kuhn v. Curran,* 56 N. Y. Supp. 2d 737, 184 Misc. 788.

The Declaration of Rights of Maryland, Article 8, provides: "That the Legislative, Executive and Judicial powers of Government ought to be forever separate and distinct from each other; and no person exercising the functions of one of said Departments shall assume or discharge the duties of any other."

In *Watkins v. Watkins,* 2 Md. 341, the courts were asked to issue a writ of *mandamus* requiring the then Adjutant General to deliver papers to his alleged successor. This Court was of the opinion that until the Governor and Senate concurred in the appointment of an Adjutant General, the appellee, the then Adjutant General, held under his commission and as no such concurrence by the Senate had occurred, he continued to hold his commission. This Court there said: "In regard to that part of the argument of the learned counsel for the appellant which was based on the supposititious case, that if the foregoing reasoning be correct, the senate might defeat both the spirit and letter of the constitution by a failure to obey its injunctions, we have only to observe, that in all human contrivances confidence must be reposed somewhere, and that under the distribution of the powers of government in our State, it is not given to the judiciary to *compel* action on the part of a co-ordinate branch of the government. Its authority is confined to *restraining* the potency of its enactments when they transcend constitutional limits." In the instant case legislative action has not been completed. Certainly the Bill has not been *enacted.* Under the constitutional requirement of Article II, Section 17, *supra,* the Bill must be resubmitted to the Legislature. To grant the relief here prayed would be plain interference with legislative action which is forbidden by Article 8, of the Declaration of Rights, *supra.* Article III, Section

28, of the Constitution of Maryland, provides in part that: "No bill shall become a law unless it be passed in each House by a majority of the whole number of members elected, * * *." It could hardly be contended that after one House had passed a bill the courts could enjoin the submission of that bill to the other House on the allegation that the bill as passed by the one House was unconstitutional or unlawful. That is essentially what we are asked to do here.

The appellant here is also asking that an advisory opinion be rendered on pending legislation. It has been held specifically by this Court that it will not render advisory opinions to the Legislature or to anyone else. It was held in *Hammond v. Lancaster*, 194 Md. 462, 71 A. 2d 474, that the courts will not, in the absence of constitutional mandate, render advisory opinions. Nor will the courts render advisory opinions unless there is an actual justiciable controversy between the parties. *Tanner v. McKeldin*, 202 Md. 569, 580, 97 A. 2d 449.

We are therefore of opinion that the chancellor had no jurisdiction to determine the questions raised by the Petition here, and correctly dismissed it. For the reasons herein stated we passed the *per curiam* order on January 12, 1956, dismissing the Petition.