Dear Honorable Sheila Dixon
You have asked for our opinion concerning several proposed amendments to the Baltimore City Charter that would reduce the size of the City Council. Specifically, you ask which proposed amendment would prevail if two or more of the proposals appear on the ballot and are approved by the voters.
You forwarded an opinion of the City Solicitor that concludes that "if several charter amendments concerning the composition of the City Council were placed on the ballot and more than one received a majority of votes then all the proposals that passed must fail." That opinion relies in part on a letter of advice by Assistant Attorney General Richard E. Israel dated October 9, 1981. Copies of the City Solicitor's opinion and Mr. Israel's letter are attached.
We have reviewed the City Solicitor's opinion and Mr. Israel's letter and agree with the City Solicitor's conclusion. We note that, as Mr. Israel indicated, if the voters simultaneously approved multiple charter amendments a court would first attempt to reconcile the various amendments. Thus, our opinion is based on the premise that the various proposals to reduce the size of the City Council would be irreconcilable in that they would define districts differently or provide for different numbers of members from those districts.
The Baltimore City Charter itself does not provide a method for choosing among several conflicting amendments. In this regard, the Council might propose a charter amendment to resolve conflicting charter amendments.[1] See, e.g., Anne Arundel County Charter, § 1202(b) (if voters approve inconsistent charter amendments, only the amendment with the highest number of votes takes effect). If such an amendment were approved by the voters, we believe that the courts would look to it to resolve a conflict among approved amendments to reduce the size of the Council.[2] Similarly, to the extent that conflicting amendments are proposed by the Council itself, the effectiveness of each could be made contingent on receiving the highest number of votes among the competing proposals. See Andrews v. Governor, 294 Md. 285, 449 A.2d 1144 (1982) (upholding submission to voters of constitutional amendment subject to contingency).
J. Joseph Curran, Jr. Attorney General
Robert N. McDonald Chief Counsel Opinions Advice
June 25, 2002
The Honorable Sheila Dixon President, Baltimore City Council
Re: Multiple Charter Amendments on Composition of the City Council
You have requested the advice of the Law Department with regard to what would happen if more than one proposed amendment received a majority of favorable votes. There has been much discussion recently regarding the downsizing of the Baltimore City Council. As a result of the attention that this issue has received it appears likely that there will be multiple Charter amendments on the ballot purposing new configurations for the City Council. There are several alternatives being proposed by the Council itself and at least one that is being petitioned onto the ballot by the League of Women Voters.
The first issue that arises concerns the process to be followed should more than one charter amendment make it onto the ballot. Traditionally, Charter amendment questions are set forth individually and citizens vote yes or no on each proposed amendment. Article XI-A the Maryland Constitution, Section 5 provides that "if at the election the majority of the votes cast for and against the amendment shall be in favor thereof, the amendment shall be adopted." If there are multiple amendments on the ballot, and they are voted on individually, potentially more that one could receive a majority of favorable votes. The question then becomes how do you determine which is the successful amendment.
It is clear that the courts will not intervene prior to the election to limit the number of proposals on the ballot. In Hillman v. Stockett,183 Md. 641, 39 A.2d 803 (1944), the Court of Appeals was asked to issue a writ of mandamus to prevent two contradictory constitutional amendments from being placed on the ballot. The court stated:
Petitioner also contended that Chapter 772 and Chapter 796 were both null and void because they were in conflict and that the Court should so hold both proposals. It would seem to be obvious that this question was not before the Court. Neither of the proposals had been voted on, neither might be adopted by the voter, or one might be adopted, and other might fail of adoption. The voters might conclude, as did the petitioner, that the two were contradictory, and therefore, they might determine to adopt the one they preferred, and not to adopt the other. The Court could not anticipate the action of the people. It would be assuming powers, far beyond the scope of those given to the judiciary, were it to refuse to permit the people to choose between two contradictory proposals (if they were contradictory), by declaring both proposals void, in advance of the adoption of either. If two contradictory provisions are placed in the Constitution, it might then become the duty of the Court to construe them and to determine what they mean. Until the occasion arises, the Court has here only to do with proposals. There is nothing in the Constitution to prevent the Legislature from making as many proposal as it chooses, and form making such proposals contradictory, in order to let the people choose between them. The only requirement is that the proposals shall be made in the manner prescribed by the Constitution, . . .
The Courts in Maryland have not addressed the issue of which of two conflicting charter amendments would prevail if both received a majority vote in an election. In 1981, however, the Attorney General's Office was asked to respond to this issue. Although the Attorney General did not issue an opinion, a letter of advice was drafted. Richard E. Israel, Assistant Attorney General responded that, in his view, neither amendment could be given effect if they were completely irreconcilable. Applying the law applicable to constitutions, it was Mr. Israel's opinion that irreconcilable amendments to a county charter that are simultaneously enacted by the voters must both fail. Some State constitutions have expressed provisions to resolve the problem of conflicting amendments. See 16 Am. Jur.2d Constitutional Law, Section 33. The Baltimore City Charter has no provision for choosing between two conflicting Charter amendments that have been approved by the voters. In the absence of such a provision, there is no alternative but to find that both proposals fail. See 16 Am. Jur.2d Constitutional Law, Section 63.
Based on the foregoing, if several Charter amendments concerning the composition of the City Council were placed on the ballot and more than one received a majority of votes then all the proposals that passed must fail.
I hope that this responds to your question. Please contact the Law Department if you have any further questions.
Thurman W. Zollicoffer, Jr.
City Solicitor
Linda C. Barclay Chief, Legal Counsel Division
Elena R. DiPietro Assistant City Solicitor
October 9, 1981
The Honorable Helen L. Koss
This is in response to your request for advice of counsel on which amendment to a county charter would prevail in the event that two are adopted at the same time and both are in irreconcilable conflict.
Although a court would certainly make every effort to harmonize apparently conflicting amendments adopted at the same time, if they were indeed utterly irreconcilable, it is my view that neither could be given effect.
The Charter Home Rule Amendment to the Constitution provides that amendments to a charter may be proposed by the council or by petition of the voters. Article IX-A, Sec. 5. A proposed amendment is to be submitted to the voters at the next general or congressional election, and, if a majority of the votes cast are in favor of the amendment, the amendment is adopted and becomes part of the charter after 30 days following the election. Article XI-A, Sec. 5. There is no express provision dealing with what happens when two irrecon-cilable amendments are adopted at the same time, nor have the reported cases of this State addressed this issue. Moreover, neither the Constitution, Article XI-E, Sec. 4, the laws, Md.
Code, Art. 23A, Secs. 11-18, nor the courts, in their reported cases, have dealt with this issue in the amendment of municipal charters. However, the analogy to amending the State Constitution is instructive.
In Ritchmont Partnership v. Board of Supervisors of Elections for Anne Arundel County, 283 Md. 48, 58 (1978), the Court of Appeals referred to a county charter as being, "in effect, a local constitution." See also Cheeks v. Cedlair Corp., 287 Md. 595, 606 (1980). Neither the State Constitution, Art. XIV, Sec. 1, nor the reported cases of the State's courts have dealt with the issue of the simultaneous adoption of irreconcilable amendments. However, it has been said that "where a section of the constitution is amended at the same time by two different amendments, and the amendments adopted are directly in conflict, and it is impossible to determine which should stand as a part of the constitution or to reconcile the same, then they must both fail." 16 Am.Jur.2d, "Constitutional Law," Sec. 103. The same has been said to be true with respect to simultaneously enacted, irreconcilable statutes. 1A Sutherland Statutory Construction Sec. 23.17 (3rd Ed.). These rules would appear to be premised on the view that in the absence of a constitutionally sanctioned way for resolving such conflicts, the courts should not attempt to bring clarity to that which is inherently confused. Thus, although some State Constitutions provide that in the event of the simultaneous adoption of conflicting constitutional amendments, the one receiving the highest vote prevails, 16 Am. Jur.2d, "Constitutional Law," Secs. 47 and 103, clearly there must be an express provision of the Constitution to bring about this result.
In summary, in the absence of any express provision in Article XI-A, Sec. 5, for determining which amendment to a county charter prevails in the event of the adoption at the same time of utterly irreconcilable amendments, I think that the analogy to amending a Constitution might reasonably be followed with the result that neither amendment could be given effect. I might add that inasmuch as the Constitution itself declares that an amendment to a county charter is adopted when approved by a majority of the votes cast, Art. XI-A, Sec. 5, and as the Court of Appeals has said that the power to amend a county charter is derived directly from the Constitution, Ritchmont at 58-59, and Cheeks at 610, I think that providing for the resolution of conflicts between county charter amendments would have to be done by amendment of the Constitution, rather than the enactment of legislation. By way of contrast, I think that this matter could be dealt with by legislation with respect to municipal charters, inasmuch as Art. XI-E, Sec. 4, expressly deals only with the proposing of amendments to municipal charters, not their adoption, and directs the General Assembly to enact consistent legislation for the amendment of such charters.
While this letter represents my considered view of this matter, it is not an Opinion of the Attorney General
Richard E. Israel Assistant Attorney General
[1] In his advice to a State legislator, Mr. Israel observed that legislation alone could not resolve a conflict among charter amendments adopted pursuant to the State Constitution and recommended a constitutional amendment for that purpose. In our view, a charter amendment approved by the City's voters in accordance with Article XI-A, § 5 of the Constitution could accomplish the same end.
[2] Given a choice between, on the one hand, declaring void all charter amendments approved by the voters, and, on the other, giving effect to one of those amendments according to a criterion simultaneously approved by the voters, we believe the courts would select the latter course as more reflective of the will of the electorate. Cf. Dutton v. Tawes,225 Md. 484, 491, 171 A.2d 688 (1961) (election laws generally construed to give effect to "the full and fair expression of the will of the voters.")
 *Page 106