In the Matter of JOHN J. KUHN, Appellant, against THOMAS J. CURRAN, as Secretary of State of the State of New York, Respondent.

In the Matter of JOHN J. KUHN, Appellant, against ROLLIN BROWNE, as Commissioner of Taxation and Finance of the State of New York, Respondent.

Argued April 9, 1945; decided May 17, 1945.

*John W. Davis* and *Ferdinand I. Haber* for appellant. The People of the State have reserved the power to determine the number of judicial districts in the State. (*People ex rel. Bolton* v. *Albertson,* 55 N. Y. 50; *Finn* v. *City of New York,* 282 N. Y. 153; Constitution of 1846, art. VI, § 16; Constitution, art. VI, § 6, as amd. November 2, 1869; Revised Record 1894 Constitutional Convention.)

*Frederic White Shepard* for Nassau Taxpayers League, *amicus curiae* in support of appellant's position. I. The power

to " erect " is not implied in the word " alter ". The history of our Constitution shows the construction of the word by our Constitutional Conventions and by the voters. (Constitution of 1821, art. V, § 5; Constitution of 1846, art. VI, § 4; New York State Constitutional Convention 1938, Revised Record Vol. I, pp. 178, 215, 168 and index; New York State Constitutional Convention Journal, documents 15, p. 64, and 16, pp. 63–64.) II. Legislative proceedings show that the construction adopted by Constitutional Convention delegates was concurred in by legislatures. (New York State Constitutional Convention Committee, 1938, vol. II, 466, 467.) III. Efforts to erect additional districts by constitutional means having failed, at least four attempts were made to accomplish the purpose by mere legislation. IV. Chapter 614 of the Laws of 1944 should be declared unconstitutional. (*Browne* v. *City of New York*, 213 App. Div. 206; *People ex rel. Burby* v. *Howland*, 155 N. Y. 270.) V. The Legislature, after 1905, abused its power to erect new districts when it had that power and sought to exercise it after the power had been taken away. VI. The Legislature is restrained by the Constitution from exercising plenary power over the judicial districts. (*In re Thirty-fourth Street R. R. Co.*, 102 N. Y. 343.) VII. The construction of the Constitution for which we contend is confirmed by " the settled practise of the years ". (*Story* v. *Craig*, 231 N. Y. 33.)

*James H. Glavin, Jr.,* and *Reginald C. Smith* for Lawyers Association of Suffolk County, *amicus curiæ* in support of appellant's position. I. Chapter 617 of the Laws of 1944 is unconstitutional. (*Studebaker* v. *Perry*, 184 U. S. 258; *Norwegian Nitrogen Co.* v. *U. S.*, 288 U. S. 294.) II. The legislation is not remedial or progressive.

*Nathaniel L. Goldstein, Attorney-General* (*Wendell P. Brown, Orrin G. Judd, John C. Crary, Jr.,* and *John R. Davison* of counsel), for respondents. I. Section 1, of article VI, of the Constitution reserves to the Legislature the power to change the number of judicial districts. The natural meaning of the language reserving to the Legislature power to alter the judicial districts includes authority to increase their number. (*Matter of Wendell* v. *Lavin*, 246 N. Y. 115; *Matter of Stoughton* v. *Cohen,* 281 N. Y. 343; *Gibbons* v. *Ogden*, 9 Wheat 1; *People* v.

*Sassovich,* 29 Cal. 480; *Attorney-General of Canada* v. *Attorney-General of Ontario,* XX Ont. 222; *Adams* v. *Shelbyville,* 154 Ind. 467.) II. The historical development of section 1, article VI, sustains the existence of legislative power to increase the number of judicial districts. In Constitution of 1821, article V, § 5; L. 1823, ch. 182; Constitution of 1846, art. VI, §§ 4, 16.) III. The declared purpose of the present provision of section 1, article VI, was to relieve the Legislature from the restraint forbidding increase in the number of judicial districts. (Constitution, art. III, § 1; *Oswego & Syracuse R. R. Co.* v. *State,* 226 N. Y. 351.)

*Rowland L. Davis, Charles H. Gardner* and *D. Ormonde Ritchie* for Suffolk County Bar Association, *amicus curiæ* in support of respondents' position. I. The constitutionality of a statute is a judicial question. The court will give consideration to the origin, history and circumstances attending the adoption of the provision challenged. (*Sweet* v. *City of Syracuse et al.,* 129 N. Y. 316.) II. The Legislature being supreme in its field, its acts are presumed to be in harmony with the fundamental law; and informed and mindful of its constitutional limitations. The person challenging the act carries the burden of satisfying the court to the contrary. (*People ex rel. Henderson* v. *Supervisors,* 147 N. Y. 1.) III. Words or language used are to be given their ordinary meaning. (*Matter of Sherrill* v. *O'Brien,* 188 N. Y. 185.)

LEHMAN, Ch. J. The petitioner, a resident and taxpayer in Nassau County, asks in these two proceedings for orders in the nature of mandamus directing the Secretary of State and the Commissioner of Taxation and Finance of the State of New York " to disregard Chapter 617 of the Laws of 1944 " and to discharge their official duties " as if said statute had not been enacted ". The challenged statute is entitled " An Act to amend the judiciary law, in relation to altering the state into ten judicial districts of the state and providing for the number of justices in the second and tenth judicial districts and for additional stenographers and clerks in the tenth judicial district, as provided by article six, section one of the constitution ". The purpose of the proceedings is to obtain an authoritative decision that under the Constitution of the State the Legislature has

not been granted the power of " altering the state into ten judicial districts ". Mr. Justice BERGAN at Special Term sustained the validity of the statute in a careful opinion, and dismissed the petitions on the merits. The petitioner has appealed to this court from the orders of Special Term pursuant to the provisions of subdivision 4 of section 588 of the Civil Practice Act.

The only question involved is whether the statute is valid under the provisions of the Constitution of the State. Section 1 of article VI of the Constitution provides, among other things, that: " The existing judicial districts of the state are continued until changed as hereinafter provided. The supreme court shall consist of the justices now in office and their successors, together with such additional justices as may be authorized by law. The successors of said justices shall be chosen by the electors of their respective judicial districts. The legislature may alter the judicial districts once after every federal census or state enumeration, each district being bounded by county lines and thereupon re-apportion the justices to be thereafter elected in the districts so altered." The effect of chapter 617 of the Laws of 1944, if valid, is to amend section 140 of the Judiciary Law so as to divide the State into ten judicial districts instead of nine, creating a tenth judicial district to consist of the counties of Nassau and Suffolk which have been part of the second judicial district; and by amendment of other sections of the Judiciary Law, to reapportion the justices to be hereafter elected in the second judicial district (as altered by the excision of the counties of Nassau and Suffolk) and in the newly created tenth judicial district; and to reapportion also the justices who were chosen by the electors of the second judicial district as it existed at the time the statute was enacted and whose terms have not yet expired. The validity of the statute depends primarily upon whether the grant in the Constitution by the People of the State to its Legislature of power to " alter " the nine judicial districts of the State as " continued " by the Constitution " until changed as hereinafter provided " includes a power to establish additional judicial districts by withdrawal of territory from one or more existing judicial districts and integration of the territory withdrawn into one or more new districts.

In view of the importance to the public of an authoritative determination of that question at the present time, we do not pause to consider whether the question is presented in appropriate proceedings. Sufficient, at present, that a controversy exists between the parties to the proceedings immediately affecting them, and that all parties entitled to be heard in regard to the questions involved are here represented. In considering that question we note at the outset that the Legislature by the Constitution is granted the power to " alter *the judicial districts* " and that the statute is entitled " An Act to amend the judiciary law, in relation *to altering the state into ten judicial districts* ". The difference in language is unimportant if the power to " alter the judicial districts " includes the power to increase the number of districts, but it serves to define the legal question presented upon this appeal. The attempted division of the second judicial district as previously established certainly alters *that district*. The power of the Legislature to do that is clear, but it is not so clear that the Legislature could then create a new district out of the counties removed from the second district and thus " alter the state " into an increased number of judicial districts. Alteration of the judicial districts of the State necessarily involves increase or decrease in the size of some districts. The Legislature has found implicit in the grant to it of the power to alter the judicial districts of the State, the power to establish new districts out of the territory withdrawn from existing districts.

Article VI of the Constitution relating to the " Judiciary " was adopted by vote of the People in November, 1925. The provisions of section 1 of that article relating to the judicial districts of the State and granting power to the Legislature to alter existing districts are derived, without change of language, from the Constitution of the State formulated by the Constitutional Convention of 1894 and then adopted by vote of the People. The provisions of that Constitution were in turn derived, but with some changes to which we shall refer hereafter, from earlier Constitutions. In construing the existing constitutional provisions, their derivation and history must be kept in mind.

The Constitution of 1821 provided in article V, section 5, that: " The state shall be divided by law into a convenient number of

circuits, not less than four nor exceeding eight, subject to altera-
tion by the legislature from time to time as the public good
may require  *  *  *  ''  The power of '' alteration '' of the
'' number of circuits '' granted by that Constitution included
the powers to increase or decrease the number of circuits; but
subject to the qualification that the number could not be less
than four or more than eight.   In the exercise of the power thus
conferred upon it, the Legislature enacted chapter 182 of the
Laws of 1823, providing for eight circuits corresponding with
the eight Senate districts of the State.

The judicial system thus established proved inadequate, but
even though the Governors of the State in their annual messages
repeatedly called attention to the need for reform to meet the
demands of accumulated business and proposals for numerous
amendments were introduced into the Legislature, none was
adopted.   See '' Problems Relating to Judicial Administration
and Organization '' (Report of New York State Constitutional
Convention Committee, 1938, Vol. IX, p. 36).

The Constitutional Convention of 1846 accordingly, after long
debate, revised the judicial system of the State and made funda-
mental changes in it.   Among other things the judiciary article
of the new Constitution provided:

'' Section 4.   (Judicial districts).   The state shall be divided
into eight judicial districts, of which the city of New York shall
be one; the others to be bounded by county lines, and to be com-
pact and equal in population as nearly as may be.   There shall
be four justices of the supreme court in each district, and as
many more in the district composed of the city of New York
as may, from time to time, be authorized by law, but not to
exceed in the whole such number, in proportion to its population,
as shall be in conformity with the number of such judges in the
residue of the state in proportion to its population '' (art. VI,
§ 4) and

'' Section 16.   (Reorganization of judicial districts.)   The
legislature may reorganize the judicial districts at the first ses-
sion after the return of every enumeration under this constitu-
tion, in the manner provided for in the fourth section of this
article, and at no other time; and they may, at such session,
increase or diminish the number of districts; but such increase
or diminution shall not be more than one district at any

one time. Each district shall have four justices of the supreme court; but no diminution of the districts shall have the effect to remove a judge from office." (Art. VI, § 16.)

By these constitutional provisions, the power to " reorganize the judicial districts " was conferred upon the Legislature and coupled with it the express power to " increase or diminish the number of districts " by not more than one at any one time, but the Legislature was given only a rigidly limited power to increase the number of judges.

In the exercise of the powers thus conferred upon it, the Legislature by chapter 241 of the Laws of 1847 provided that: " The state is hereby divided into eight judicial districts, pursuant to the provisions of the fourth section of the sixth article of the constitution, which districts shall be arranged as follows: * * * " then specifying the counties included in each district. That statute is the precursor of section 140 of the Judiciary Law, and it is perhaps noteworthy that prior to the adoption of chapter 617 of the Laws of 1944 which is now challenged, there have been few changes in the boundaries of the judicial districts established in 1847. The report of the Board of Statutory Consolidation (1907) which formulated the Judiciary Law has, on page 31, the following note: " L. 1847, Ch. 241, § 1, divided the state into eight judicial districts pursuant to the provisions of the Constitution of 1846. The boundaries of the first judicial district were established by L. 1906, Ch. 285. The second judicial district was divided into two districts, the second and ninth, by L. 1906, Ch. 294, § 1. The second district as thus established, consists of the counties of Richmond, Kings, Queens, Nassau and Suffolk. The other counties in the former second district, viz., Westchester, Putnam, Dutchess, Orange and Rockland, were established by said act as the ninth judicial district. The county of Schuyler was added to the sixth judicial district by L. 1857, Ch. 485, § 1." (Report of Board of Statutory Consolidation, 1907, p. 3194.)

The power to " increase " the number of districts was expressly withheld from the Legislature by the Constitution of 1869, which provided: " The existing judicial districts of the state are continued until changed pursuant to this section * * * . The legislature may alter the districts, without increasing the number, once after every enumeration, under

this constitution, of the inhabitants of the state." (Art. VI, § 6.) Thus in the Constitution of 1821 the people in express terms conferred upon the Legislature a limited power " to increase or diminish " the number of judicial circuits; in the Constitution of 1846 the People in express terms conferred upon the Legislature a limited power to " increase or diminish " the number of judicial districts; while in the Constitution of 1869 the power to increase the number was in express terms withheld. Perhaps it is not without significance that in three successive constitutional conventions prior to the Convention of 1894, the framers of constitutions to be submitted for approval to the People of the State found it advisable to clarify a power granted to the Legislature to " alter " or to " reorganize " or to " change " judicial circuits or districts by express provision that such power did or did not include the power to " increase " their number but never granted a power to increase or decrease the number without imposing some limitation upon the exercise of that power.

The Constitutional Convention of 1894 incorporated in the Judiciary Article of the Constitution, which was submitted to and approved by the People at the election held that year, the provisions of the Constitution of 1869 relating to the power of the Legislature to " change " or " alter " the judicial districts of the State, except that the words " without increasing the number " were omitted. (Art. VI, § 1.) Thus the question arises whether by the omission of the words " without increasing the number " the People of the State intended to grant to the Legislature a power to establish additional districts which the People had previously withheld.

Distinguished lawyers were members of the committee which drafted the Judiciary Article of the new Constitution and its chairman was the Honorable Elihu Root, who was, for many years, an unchallenged leader of the bar. The elimination by the committee of the qualifying words " without increasing the number " from the grant of the power to " alter the districts ", at least suggests that the framers of the article intended that, if the People approved the proposed Constitution, the grant of the power to " alter the districts " should thereafter include the power to increase that number. The proposal, that the qualifying clause should be omitted from the grant, was introduced in printed form, bearing introductory number 277 and

print number 279, entitled " Proposed Constitutional Amend-
ment to amend section six of the constitution so as to permit the
legislature to increase the number of judicial districts ", by Mr.
Dickey, later a justice of the Supreme Court. The proposal
was accepted by the Judiciary Committee and persuasive argu-
ment may be made that lawyers of distinction would not have
approved the omission of the qualifying words from the grant
of power to alter the judicial districts, unless by such omission
they had intended to enlarge the grant. The omission of the
qualifying words seems particularly significant because in
formulating section 2 of article VI relating to the manner in
which the judicial departments of the State shall be constituted,
the Convention coupled the grant to the Legislature of power
to " alter the boundaries of the judicial departments " with
the express qualification " but without increasing the number
thereof ".

We may not, however, construe the words of the Constitution
in exactly the same manner as we would construe the words of a
will or contract drafted by careful lawyers, or even a statute
enacted by the Legislature. It is the approval of the People of
the State which gives force to a provision of the Constitution
drafted by the convention, and in construing the Constitution
we seek the meaning which the words would convey to an intelli-
gent, careful voter. A grant of an enlarged power by the
People should not rest upon doubtful implication arising from
the omission of a previous express limitation, at least unless it
appears that the omission and its significance was called to the
attention of the People. Here, there may be doubt as to whether
the significance of the change was fully realized even by the
members of the Convention.

The printed records of the Convention do not show that there
was any discussion in the Convention of a proposal to eliminate
the words " without increasing the number " and thus, perhaps
to permit the Legislature to increase the number of judicial
districts; indeed, the only reference to the proposal is contained
in an explanatory statement relating to the Judiciary Article
signed by Mr. Root as Chairman of the Judiciary Committee. It
is there stated that the proposed constitutional amendment " No.
279 " introduced by Mr. Dickey was included in the proposed
Judiciary Article; but nowheres in any debate or in answer to
any question concerning the effect of provisions of the article did

Mr. Root make any reference to a possible increase or decrease in the number of judicial districts. The absence of debate or comment suggests doubt whether the members of the Judiciary Committee and the members of the Convention intended to enlarge the legislative power in the premises by omission of an express limitation. That doubt is perhaps strengthened by the fact that two distinguished members of the Judiciary Committee had, as members of the Legislative Commission of 1890, recommended that the provisions of the Judiciary Article of the Constitution of 1869 relating to the alteration of judicial districts should remain unchanged.

Conflicting inferences may be drawn from such circumstances and doubt might still remain as to the scope of the power of the Legislature to " alter " the judicial districts, if our only guide were the proceedings of the Constitutional Convention of 1894 and the bare words of the Constitution there formulated and approved by the People at the next election. We find a better guide in the later pronouncements of the Legislature and of the People when, in the opinion of the Legislature, it became advisable to divide the second district and to establish a ninth district consisting of counties which previously were part of the second district. The Legislature did not then assert that power to increase the number of judicial districts had been conferred upon it by the Constitution of 1894, but in 1905 asked the People of the State to approve an amendment to the Constitution, amending article VI, section 1, by adding a new paragraph to that section reading as follows: " Section 1. * * * The legislature may, from time to time, increase the number of justices in any judicial district, except that the number of justices in the first and second district or in any of the districts into which the second district may be divided, shall not be increased to exceed one justice for each eighty thousand or fraction over forty thousand of the population thereof, as shown by the last state or federal census or enumeration, and except that the number of justices in any other district shall not be increased to exceed one justice for each sixty thousand or fraction over thirty-five thousand of the population thereof, as shown by the last state or federal census or enumeration. The legislature may erect out of the second judicial district, as now constituted, another judicial district and apportion the justices in office

between districts and provide for the election of additional justices in the new district not exceeding the limit herein provided.'' That amendment was adopted.

A specific grant to the Legislature by the People in article VI, section 1, of power to erect '' out of the Second Judicial District as now constituted another judicial district '' is patently inconsistent with a construction of another part of the same section as a grant of plenary power to increase or decrease at will the number of judicial districts of the State. Attempted explanations of the submission by the Legislature to the People of the proposed amendment cannot change the fact that by mandate of the People the Legislature was given a specific power to erect '' another judicial district '' out of the existing second district, and that after that district was erected, the power of the Legislature to erect new districts was exhausted.

In the Report of the New York State Constitutional Convention Committee, 1938, the effect of the amendment adopted in 1905 is summarized as follows:

'' *In 1905 an amendment to section 1 was adopted by the people. This amendment gave the Legislature two additional powers not theretofore possessed:*

'' (1) The Legislature was authorized to increase the number of justices in any judicial district, on the basis of the population of the district. * * *

'' *(2) The Legislature was authorized to create a new judicial district out of part of the second district.*

'' By the Laws of 1906, chapter 294, section 1, Westchester, Putnam, Dutchess, Orange and Rockland counties were taken out of the second judicial district and made into a new judicial district known as the ninth.'' (Vol. IX, p. 57. Italics are now supplied.)

Until the Judiciary Article (art. VI) of the Constitution now in effect was adopted in 1925, section 1 of article VI of the Constitution of 1894 as amended in 1905, including the provision conferring upon the Legislature specific power to create a single new judicial district, remained unchanged, though that power had been fully exercised. No contention is made that the elimination of the grant of a specific power, already exhausted, to create a single specified additional district indicates an intention to grant a broad power to create additional districts at will.

The Legislature had been without power to increase the number of judicial districts since 1869. Possible doubt whether by the Constitution of 1894 the People conferred upon the Legislature such power was removed by the amendment of 1905 and certainly no new power was conferred by the amended article in 1925. We are not concerned whether a grant of such power by the People would facilitate efficient judicial administration. It has not been granted by the People in express terms and the People have indicated that it may not be read by implication into the grant of power " to alter the judicial districts " of the State.

The orders should be reversed and the proceedings remitted to the Special Term for the entry of orders not inconsistent with this opinion, without costs.

LEWIS, J. (dissenting). The statute about to be declared unconstitutional was enacted pursuant to article VI, § 1, of the State Constitution which provides in part: " *  *  *  The existing judicial districts of the state are continued until changed as hereinafter provided. *  *  *  The legislature may *alter* the judicial districts once after every federal census or state enumeration, each district being bounded by county lines and thereupon re-apportion the justices to be thereafter elected in the districts so altered." (Italics added.)

A majority of the court have concluded that in its context the word " alter " may not be construed to mean increase, although a meaning commonly ascribed to that word is " To add to or diminish." (3 C. J. S. 898; *People* v. *Sassovich,* 29 Cal. 480, 484; *Kosidowski* v. *Milwaukee,* 152 Wis. 223, 226.)

I believe that to read the phrase — " The legislature may alter the judicial districts *  *  *," as granting permission to *increase* those districts is consonant with the historical development of the Judiciary Article. Passing earlier data it appears that when the delegates gathered for the Constitutional Convention of 1894 they found that, as to judicial districts then existing in the State, the Judiciary Article, as last amended in 1869, contained the restriction — " The legislature may alter the districts *without increasing the number,* once after every enumeration, *  *  *" (Italics added). In the course of the Convention's deliberations a proposal (No. 279) was introduced to amend the Judiciary Article by striking out the words

" without increasing the number " (which followed the word " alter "). The purpose of the amendment, as declared in the proposal was — " * * * to permit the legislature to increase the number of judicial districts." (Revised Record Constitutional Convention, 1894, Vol. 1, p. 641.) In the body of that proposal the only amendment to the existing text was " to strike out the words ' without increasing the number ' * * *." The proposal was adopted by the Judiciary Committee. Subsequently, in a written statement explanatory of the revision of the entire Judiciary Article recommended by the Judiciary Committee, Mr. Elihu Root as chairman advised the Convention that proposal No. 279 was among those adopted and included in the proposed revised article. (Revised Record Constitutional Convention, 1894, Vol. II, p. 468.) As thus revised the Judiciary Article was adopted by the Convention of 1894 and subsequently in the same year was approved by the People of the State.

No amendment has since nullified the particular constitutional change thus set in motion by the introduction in the Convention of 1894 of proposed amendment No. 279, the declared purpose of which was " to permit the legislature to increase the number of judicial districts."

In that connection it is noteworthy that when that same Convention, by its revision of section 2 of the Judiciary Article, constituted four new judicial departments as an incident to the creation of the present four Appellate Divisions of the Supreme Court, it again employed the word " alter " when it granted to the Legislature power " to alter the judicial departments." In doing so, however — as if to emphasize that by its prior use of the word " alter " it had meant *increase* — the Convention expressly qualified the power thus granted to the Legislature by the phrase — " without increasing the number thereof."

Finally, I find it significant that although the 1925 amendment to the Judiciary Article omitted provisions which had been included in the amendment of 1905 relating to a local condition, it did not replace the restriction against increasing the number of judicial districts which the Convention of 1894 had eliminated.

These considerations lead me to the conclusion that article VI, section 1, afforded a constitutional basis for the enactment of chapter 617 of the Laws of 1944. Accordingly, I dissent and vote for affirmance.

LOUGHRAN, CONWAY and DYE, JJ., concur with LEHMAN, Ch. J.; LEWIS, J., dissents in opinion in which DESMOND and THACHER, JJ., concur.

Orders reversed, etc. [See 294 N. Y. 963.]