**OPINION OF THE JUSTICES of the Supreme Judicial Court Given Under the Provisions of Section 3 of Article VI of the Constitution.**

Supreme Judicial Court of Maine.

Questions Propounded by
the House of Representatives and
the Senate in a Communication
Dated Jan. 30, 1996.

Questions Propounded by the Governor
In a Communication Dated Feb. 14, 1996.

Answered March 28, 1996.

**STATE OF MAINE**

In House January 30, 1996

Joint Order Propounding Questions
to the Justices of the
Supreme Judicial Court

WHEREAS, it appears to the Senate and the House of Representatives of the 117th Legislature that the following are important questions of law and that this is a solemn occasion; and

WHEREAS, the Constitution of Maine, Article VI, Section 3, provides for the Justices of the Supreme Judicial Court to render their opinion on these questions; and

WHEREAS, L.D. 1003 from the First Regular Session of the 117th Legislature proposed amending the Constitution of Maine to provide a line-item veto power to the Governor; and

WHEREAS, L.D. 1003 was passed by the Legislature and sent to the people of Maine as 1995 Constitutional Resolution, chapter 1, who passed the measure by referendum vote at the statewide election in November 1995; and

WHEREAS, there exists some ambiguity and confusion as to the operation of the Constitution of Maine, Article IV, Part Third,

Section 2–A and the relationship between the line-item veto power articulated in Section 2–A and the more general veto power of the Governor articulated in Article IV, Part Third, Section 2; and

WHEREAS, in each session of the Legislature there are many legislative documents with an appropriation section, an allocation section or both and the current session is no exception; and

WHEREAS, it is critical to have these outstanding issues resolved in advance of the exercise of the line-item veto; and

WHEREAS, unless the questions of law posed at this solemn occasion are answered, the ability of the Legislature and the Governor to carry out their constitutional duties and responsibilities may be severely compromised; and

WHEREAS, it is important that the Legislature be informed as to the questions raised in this Order; now, therefore, be it

ORDERED, that in accordance with the provisions of the Constitution of Maine, the Senate and the House of Representatives respectfully request the Justices of the Supreme Judicial Court to give the Senate and the House of Representatives their opinion on the following questions of law:

Question No. 1. Once the Governor has exercised the line-item veto power under Section 2–A, if the Legislature overrides any dollar amount vetoed, is the Legislature required to return the document to the Governor to allow the Governor to use the more general veto power under Section 2 to veto the entire document, even though Section 2–A by its own terms provides that any part or parts of the legislative document not specifically revised become law?

Question No. 2. If the answer to question 1 is yes:

A. Does the 10–day limitation imposed on the Governor by Section 2 begin to run upon the initial presentation to the Governor regardless of whether the line-item veto power is used or does it begin to run when it is returned to the Governor again?

B. Within what time frame must the Legislature return the document to the Governor?

C. If the Governor were to attempt to return the document with a second or subsequent exercise of the line-item veto power, must the Legislature continue to reconsider the returned document under Section 2–A?

Question No. 3. For emergency legislation, what is the effective date for any dollar amount revised by the Governor through the use of the line-item veto power in Section 2–A on which the Legislature fails to take action, fails to override or overrides?

Sponsored by: /s/ George J. Kerr
(Representative KERR)
TOWN: Old Orchard Beach

EXHIBIT A

STATE OF MAINE

IN THE YEAR OF OUR LORD
NINETEEN HUNDRED AND NINETY–
FIVE

H.P. 729—L.D. 1003

**RESOLUTION, Proposing an Amendment to the Constitution of Maine to Establish a Line-item Veto**

**Constitutional amendment. RESOLVED:** Two thirds of each branch of the Legislature concurring, that the following amendment to the Constitution of Maine be proposed:

**Constitution, Art. IV, Part Third, § 2–A** is enacted to read:

Section 2–A. Line-item veto of dollar amounts appearing in appropriation or allocation sections of legislative documents. The Governor has power to disapprove any dollar amount appearing in an appropriation section or allocation section, or both, of an enacted legislative document. Unless the Governor exercises the line-item veto power authorized in this section no later than one day after receiving for signature the enacted legislation, the powers of the Governor as set out in section 2 apply to the entire enacted legislation. For any disapproved dollar amount, the Governor shall replace the dollar amount with one that does not result in an increase in an appropriation or allocation or a decrease in a deappropriation or deallocation. When disapproving a dollar amount pursuant to this section, the Governor may not propose an increase in an appropriation or allocation elsewhere in the legislative document. The Governor shall specify the distinct dollar amounts that are revised, and the part or parts of the legislative document not specifically revised become law. The dollar amounts in an appropriation or allocation that have been disapproved become law as revised by the Governor, unless passed over the Governor's veto by the Legislature as the dollar amounts originally appeared in the enacted bill as presented to the Governor; except that, notwithstanding any other provision of this Constitution for dollar amounts vetoed pursuant to this section, a majority of all the elected members in each House is sufficient to override the veto, and each dollar amount vetoed must be voted on separately to override the veto. Except as provided in this section, the Governor may not disapprove, omit or modify any language allocated to the statutes or appearing in an unallocated section of law.

; and be it further

**Constitutional referendum procedure; form of question; effective date. Resolved:** That the municipal officers of this State shall notify the inhabitants of their respective cities, towns and plantations to meet, in the manner prescribed by law for holding a statewide election, at a statewide election, on the Tuesday following the first Monday of November following the passage of this resolution, to vote upon the ratification of the amendment proposed in this resolution by voting upon the following question:

"Do you favor amending the Constitution of Maine to give the Governor a line-item veto over expenditures of state funds, providing that vetoed items may be passed over the Governor's veto by a majority of all of the elected members of the Senate and the House of Representatives?"

The legal voters of each city, town and plantation shall vote by ballot on this question and designate their choice by a cross or check mark placed within the corresponding square below the word "Yes" or "No." The ballots must be received, sorted, counted and declared in open ward, town and plantation meetings and returns made to the Secretary of State in the same manner as votes for members of the Legislature. The Governor shall review the returns and, if it appears that a majority of the legal votes are cast in favor of the amendment, the Governor shall proclaim that fact without delay and the amendment becomes part of the Constitution on the date of the proclamation; and be it further

**Secretary of State shall prepare ballots. Resolved:** That the Secretary of State shall prepare and furnish to each city, town and plantation all ballots, returns and copies of this resolution necessary to carry out the purpose of this referendum.

STATE OF MAINE
OFFICE OF THE GOVERNOR
1 STATE HOUSE STATION
AUGUSTA, MAINE
04333–0001

February 14, 1996

Chief Justice Daniel E. Wathen
Associate Justices of the Maine Supreme
    Judicial Court
205 Newbury Street
P.O. Box 368
Portland, ME 04112

To the Honorable Justices of the Supreme Judicial Court:

This requests the advice of the Justices of the Maine Supreme Judicial Court pursuant to Article VI, § 3 of the Maine Constitution. I seek your advice on these important questions of law, believing that a solemn occasion has been created by the need of the executive and legislative branches for guidance of the Justices on implementation of the line-item veto provisions of Article IV, Part 3, § 2–A.

Therefore, I respectfully request your opinion on the following questions of law:

Question 1. Does the Executive have the constitutional authority to invoke the full veto powers of art. IV, pt. 3, § 2 following a legislative override of an earlier Executive section 2–A line-item veto. If yes, how is the ten day period for section 2 veto calculated?

Question 2. Upon receipt of a budget bill from the Legislature, does the Executive have the constitutional authority to invoke the line-item veto powers of Me. Const. Art. IV, pt. 3, § 2–A within 24 hours, and then proceed to invoke the full veto powers of art. IV, pt. 3, § 2 within ten days of original presentment of the bill if the Legislature fails to act on the line-item veto?

Question 3. Does the Executive's exercise of the section 2–A line-item veto power delay the effective date of all provisions of the affected legislation, or only the disapproved provisions, and, if so, until what date?

Thank you for your assistance in this matter.

Sincerely,
/s/ Angus King
    ANGUS S. KING, Jr.
    Governor, State of Maine

ANSWERS OF THE JUSTICES

To the Honorable House of Representatives and Senate of the State of Maine, and to the Honorable Angus S. King, Jr., Governor of Maine:

In compliance with the provisions of section 3 of article VI of the Constitution of Maine, we, the undersigned Justices of the Supreme Judicial Court, have the honor to submit the following responses to the questions propounded by the House of Representatives and the Senate on January 30, 1996, and by the Governor on February 14, 1996.

In November 1995, a majority of Maine voters approved an amendment to the Constitution that authorizes the Governor to disapprove any dollar amount appearing in an appropriation or allocation section of an enacted legislative document through the use of a line-item veto. The amendment provides:

The Governor has power to disapprove any dollar amount appearing in an appropriation section or allocation section, or both, of an enacted legislative document. Unless the Governor exercises the line-item veto power authorized in this section no later than one day after receiving for signature the enacted legislation, the powers of the Governor as set out in section 2 apply to the entire enacted legislation. For any disapproved dollar amount, the Governor shall replace the dollar amount with one that does not result in an increase in an appropriation or allocation or a decrease in a deappropriation or deallocation. When disapproving a dollar amount pursuant to this section, the Governor may not propose an increase in an appropriation or allocation elsewhere in the legislative document. The Governor shall specify the distinct dollar amounts that are revised, and the part or parts of the legislative document not specifically revised become law. The dollar amounts in an appropriation or allocation that have been disapproved become law as revised by the Governor, unless passed over the Governor's veto by the Legislature as the dollar amounts originally appeared in the enacted bill as presented to the Governor; except that, notwithstanding any other provision of this Constitution for dollar amounts vetoed pursuant to this section, a majority of all the elected members in each House is sufficient to override the veto, and each dollar amount vetoed must be voted on separately to override the veto. Except as provided in this section, the Governor may not

disapprove, omit or modify any language allocated to the statutes or appearing in an unallocated section of law.

Me. Const. art. IV, pt. 3, § 2–A (Supp.1995). Noting that the amendment drafted by the Legislature and enacted by the voters does not expressly define the relationship between the Governor's line-item veto authority articulated in section 2–A and the more general veto power provided in article IV, part third, section 2,[1] both the Legislature and the Governor propounded certain questions to the Justices. These questions seek guidance as to the relationship between the exercise of the line-item veto pursuant to section 2–A and the exercise of the general veto power pursuant to section 2; specifically, whether the exercise of the line-item veto precludes the Governor from subsequently employing the general veto power.

An advisory opinion represents the views of the individual Justices and is not a decision of the Supreme Judicial Court sitting as the Law Court. *Opinion of the Justices,* 437 A.2d 597, 610 (Me.1981). Whenever a question is asked of us by the Governor, the Senate or the House of Representatives, we first must determine "whether the case is one in which the law allows the opinions of the Justices to be given." *Opinion of the Justices,* 339 A.2d 483, 487 (Me.1975). Such an opinion constitutionally is permissible only "upon important questions of law, and upon solemn occasions...." Me. Const. art. VI, § 3 (Supp.1995). There is no doubt that the questions asked of us in this case are "important in a constitutional sense...." *Opinion*

---

1. Me. Const. art. IV, pt. 3, § 2 (Supp.1995) provides:

Every bill or resolution, having the force of law, to which the concurrence of both Houses may be necessary, except on a question of adjournment, which shall have passed both Houses, shall be presented to the Governor, and if the Governor approves, the Governor shall sign it; if not, the Governor shall return it with objections to the House in which it shall have originated, which shall enter the objections at large on its journals, and proceed to reconsider it. If after such reconsideration, ⅔ of that House shall agree to pass it, it shall be sent together with the objections, to the other House, by which it shall be reconsidered, and, if approved by ⅔ of that House, it shall have the same effect as if it had been signed by the

Governor; but in all such cases, the votes of both Houses shall be taken by yeas and nays, and the names of the persons, voting for and against the bill or resolution, shall be entered on the journals of both Houses respectively. If the bill or resolution shall not be returned by the Governor within 10 days (Sundays excepted) after it shall have been presented to the Governor, it shall have the same force and effect as if the Governor had signed it unless the Legislature by their adjournment prevent its return, in which case it shall have such force and effect, unless returned within 3 days after the next meeting of the same Legislature which enacted the bill or resolution; if there is no such next meeting of the Legislature which enacted the bill or resolution, the bill or resolution shall not be a law.

*of the Justices,* 370 A.2d 654, 667 (Me.1977). For it to be a solemn occasion, however, the questions must not be "tentative, hypothetical and abstract...." *Opinion of the Justices,* 330 A.2d 912, 915 (Me.1975). Subjects of advisory opinions must be of "instant, not past nor future concern; things of live gravity." *Opinion of the Justices,* 134 Me. 510, 513, 191 A. 487 (1936).

▇ In the past, the Justices have declined to render an advisory opinion as to the requisite vote necessary for the House of Representatives to override a section 2 gubernatorial veto, concluding that, in the absence of a vetoed measure actually pending before the Legislature, the matter was not of instant concern. *Opinion of the Justices,* 229 A.2d 829, 831 (Me.1967). The questions propounded in this case, however, concern actions that must be taken in very short time periods. If we reserved judgment and required there to be a legislative document awaiting the signature of the Governor before reaching the questions, we would not be able to respond in a meaningful way to a request for an advisory opinion within the time period during which the Governor must act. Accordingly, there does exist a solemn occasion, and we have the constitutional authority to answer the questions. *Opinion of the Justices,* 623 A.2d 1258, 1262 (Me.1993); *Opinion of the Justices,* 370 A.2d at 667.

▇ We first address the questions jointly propounded by the House of Representatives and the Senate.

QUESTION 1: Once the Governor has exercised the line-item veto power under Section 2–A, if the Legislature overrides any dollar amount vetoed, is the Legislature required to return the document to the Governor to allow the Governor to use the more general veto power under Section 2 to veto the entire document, even though Section 2–A by its own terms provides that any part or parts of the legislative document not specifically revised become law?

ANSWER: We answer in the affirmative. The briefs filed by the Attorney General and by the Counsel to the Governor acknowledge that the amendment is ambiguous and that a defensible argument can be advanced to support more than one answer. We are not persuaded that the language of section 2–A stating that "[t]he Governor shall specify the distinct dollar amounts that are revised, and the part or parts of the legislative document not specifically revised become law," requires that the Governor forego his section 2 general veto power in the event he exercises the line-item veto power. If such an interpretation were adopted, the practical effect would be to make the line-item veto virtually meaningless. We believe that a different construction of section 2–A better accords with reason and the presumed intent of the citizens who voted to amend the Constitution.

▇ In interpreting the Maine Constitution, "we look primarily to the language used...." *Farris ex rel. Dorsky v. Goss,* 143 Me. 227, 230, 60 A.2d 908 (1948). "Constitutional provisions are accorded a liberal interpretation in order to carry out their broad purpose, because they are expected to last over time and are cumbersome to amend." *Allen v. Quinn,* 459 A.2d 1098, 1102 (Me.1983). In construing the Constitution, we seek the meaning that the words would convey to an intelligent, careful voter. *Allen,* 459 A.2d at 1100 (quoting *Kuhn v. Curran,* 294 N.Y. 207, 61 N.E.2d 513, 517–18 (1945)). The plain language of section 2–A does not resolve the ambiguities surrounding the question whether a Governor's line-item veto power and general veto power are mutually exclusive. Nor does the amendment's legislative history resolve such ambiguities.[2] Although we agree that section 2–A's words "become law" *could* be read literally to mean that parts of a document not revised by the Governor become *instantly* effective, such a reading is overly restrictive and does not comport with the meaning that the amendment would convey to an intelligent, careful voter.[3] We are unpersuaded by the conten-

---

2. The legislative history is very general and offers little guidance in resolving the issues raised in the Questions propounded to us.

3. It is noteworthy that the words "become law" found in section 2–A are not commonly used in other provisions of the Constitution to signal the conclusion of the legislative process. *See, e.g.,* Me. Const. art. IV, pt. 3, § 2; *but see* art. IV, pt.

tion that the words "become law" as set forth in section 2–A necessarily mean that legislation not specifically revised cannot later be vetoed by the Governor pursuant to section 2. We read section 2–A as simply meaning that those portions of a document not subject to a line-item veto are not affected by the line-item veto and become law provided they withstand the regular section 2 veto process for the enactment of legislation.

We also agree with the Attorney General that the following language in section 2–A is ambiguous:

> Unless the Governor exercises the line-item veto power authorized in this section no later than one day after receiving for signature the enacted legislation, the powers of the Governor as set out in section 2 apply to the entire enacted legislation.

The language merely makes clear that there is a one-day time limit for the exercise of the line-item veto and does not dictate a conclusion that a line-item veto precludes a subsequent general veto.

By virtue of section 2, the Governor has ten days to decide whether to exercise a general veto. If section 2–A is interpreted to mean that the Governor's use of the line-item veto precludes subsequent use of a general

veto, the practical effect would be to require the Governor to decide whether to exercise a general veto affecting the entire enacted legislative document during the same one-day time frame in which he must decide whether to exercise a line-item veto, which is more precise and directed only to one or more dollar amounts in the legislation. Moreover, pursuant to this narrow construction, on the exercise of the line-item veto, all those provisions of the legislation not subject to the line-item veto would escape completely the possibility of the exercise of *any* veto power, negating an important safeguard necessary to the checks and balances so integral to our constitutional system. Such a construction would be at odds with the express provisions of section 2.[4]

There is nothing in section 2–A's wording or legislative history to notify the intelligent and careful voter that the proposed amendment would operate to restrict the Governor's full veto power.[5] The line-item veto instead appears to have been intended to give the Governor an additional option with respect to monetary provisions in approved legislation. If the intent of section 2–A was to abolish the use of the general veto power in the event of a line-item veto, that intent

3, § 19. To interpret section 2–A's language "become law" literally would be to ignore the amendment's other generalized provisions. For example, unlike section 2, section 2–A does not offer specific guidance as to the procedures for legislative reconsideration and override of a line-item veto. *Compare* art. IV, pt. 3, § 2's provisions regarding the Governor's objections to legislation, the return of legislation to the house of its origin, the requirements for legislative reconsideration, the type of vote to be taken in each house, and how legislation becomes law *with* art IV, pt. 3, § 2–A's more generalized language. Moreover, if the section 2–A phrase "become law" were to be read consistently to mean instantaneous effect, the items disapproved by the Governor through the exercise of his line-item veto would become law immediately as revised by the Governor, subject to subsequent invalidation by the Legislature at some indefinite time through the exercise of a legislative override. We are award of no precedent for such an odd construction or procedure.

4. In addition to the differences in time frames required for gubernatorial action (*compare* section 2's ten-day period, excluding Sundays, *with* section 2–A's one-day deadline), there is a material difference in the number of votes required to

override a governor's veto within the respective provisions. *Compare* the two-thirds majority required of both houses to override a section 2 veto *with* the simple majority required of both houses in section 2–A. There are also situations when a governor conceivably may wish to exercise both types of vetoes available under the Constitution. For example, were a governor to have numerous objections to fiscal portions of a bill, and such discrete objections expressed in a line-item veto were overridden in a timely fashion by the majority vote of both houses of the Legislature, he then is presented with a very different situation and subsequently may wish to employ the stronger weapon of the general veto, requiring a two-thirds vote in each house to be overridden, regarding the entire legislation.

5. The ballot question proposed to Maine voters in November 1995 asked: "Do you favor amending the Constitution of Maine to give the Governor a line-item veto over expenditures of state funds, providing that vetoed items may be passed over the Governor's veto by a majority of all of the elected members of the Senate and the House of Representatives?"

would be expressed in clear language.[6] In the absence of such clear language, the more sensible construction of section 2–A is that the vetoes are distinct but compatible options available to be exercised by the Governor in a concurrent fashion. The more restrictive interpretation should be disregarded because, in our view, it does not effectuate the overall intent of section 2–A to increase the power of the Governor to better control legislative spending. *Allen,* 459 A.2d at 1101–02; *Opinion of the Justices,* 137 Me. 347, 349, 16 A.2d 585 (1940).

Section 2 remains a significant part of the Constitution, despite the addition of section 2–A's language. Thus, contrary to the contention that a governor's exercise of a section 2–A line-item veto precludes the later use of the section 2 general veto power, section 2 still requires presentment of a bill to the Governor, and contemplates the possible return of it to the Legislature after a general veto of the legislation, requiring a two-thirds majority of both houses to override that general veto. The general veto provision granted to the Governor, essentially unchanged since 1820, is separate and distinct from section 2–A's requirements and was not modified in any way by the 1995 amendment.

QUESTION 2: If the answer to Question 1 is yes:

A. Does the 10–day limitation imposed on the Governor by Section 2 begin to run upon the initial presentation to the Governor regardless of whether the line-item veto power is used or does it begin to run when it is returned to the Governor again?

■ ANSWER: The calculation of the ten-day period (excluding Sundays) during which the Governor may exercise the section 2 veto commences on the initial presentment of the enacted legislation to the Governor.

This construction gives meaning and purpose to all provisions of section 2–A and maintains the integrity of the Governor's section 2 veto power. Should the Governor exercise the line-item veto without exercising the general veto power, and the Legislature fails to act in any way, "the part or parts of the legislative document not specifically revised," and "the dollar amounts in an appropriation that have been disapproved," become law at a discernable time, i.e., ten days from the original presentment to the Governor. Should the Legislature fail in its attempt to override the line-item veto, the legislation, with the Governor's dollar amounts, will become law ten days from its original presentment to the Governor, unless signed into law by the Governor prior to that time. Should the Legislature override the line-item veto before the legislation becomes law, the Governor still has the authority pursuant to section 2 to exercise the general veto within the time remaining in the ten-day period. If, following a legislative override of a line-item veto, the Governor does not exercise the general veto, the enacted bill becomes law with "the dollar amounts originally appear[ing] in the enacted bill as [originally] presented to the Governor...."

B. Within what time frame must the Legislature return the document to the Governor?

■ ANSWER: The Legislature must return the disapproved items overridden by the Legislature to the Governor before the end of the tenth day following the presentment to the Governor of the originally enacted legislation. The disapproved items must be returned in sufficient time to allow the Governor to exercise the section 2 general veto of the bill originally presented to him.

C. If the Governor were to attempt to return the document with a second or subsequent exercise of the line-item veto power, must the Legislature continue to reconsider the returned document under Section 2–A?

■ ANSWER: We read section 2–A as allowing the Governor only one opportunity to exercise the line-item veto power. The Governor, however, may return the legislation by the exercise of the general veto power, provided he acts within ten days of presentment of the enacted legislation to him.

---

6. *See* Me. Const. art. IV, pt. 3, § 19, which addresses the effective dates of measures approved by popular referendum, and expressly states that

"[t]he veto power of the Governor shall not extend to any measure approved by vote of the people...."

QUESTION 3: For emergency legislation, what is the effective date for any dollar amount revised by the Governor through the use of the line-item veto power in Section 2–A on which the Legislature fails to take action, fails to override or overrides?

ANSWER: Pursuant to Me. Const. art. IV, pt. 3, § 16, emergency legislation may take effect at such time as the Legislature directs. In the event of a line-item veto, if the Legislature fails to take action or fails to override, and the Governor does not exercise the section 2 general veto, emergency legislation would become law ten days after it initially is submitted to the Governor, unless he signs the legislation into law prior to that time, and the specified effective date thereon, if any, would govern. If the Legislature overrides the line-item veto on emergency legislation within ten days of its original presentment to the Governor, emergency legislation becomes law ten days from its original presentment, unless the Governor exercises the general veto power within that time. If the legislation becomes law, the specified effective date thereon, if any, would govern.

We next address those questions propounded to us by the Governor.

QUESTION 1: Does the Executive have the constitutional authority to invoke the full veto powers of art. IV, pt. 3, § 2 following a legislative override of an earlier Executive section 2–A line-item veto? If yes, how is the ten day period for [a] section 2 veto calculated?

ANSWER: We answer in the affirmative. The ten-day period within which a section 2 veto must be exercised begins to run on the date the legislation initially is presented to the Governor.

QUESTION 2: Upon receipt of a budget bill from the Legislature, does the Executive have the constitutional authority to invoke the line-item veto powers of Me. Const. art. IV, pt. 3, § 2–A within 24 hours, and then proceed to invoke the full veto powers of art. IV, pt. 3, § 2 within ten days of original presentment of the bill if the Legislature fails to act on the line-item veto?

ANSWER: As discussed in our responses to Questions 1 and 2 propounded by the House of Representatives and the Senate, we answer that question in the affirmative.

QUESTION 3: Does the Executive's exercise of the section 2–A line-item veto power delay the effective date of all provisions of the affected legislation, or only the disapproved provisions, and, if so, until what date?

ANSWER: In accordance with our responses to Questions 1 and 2(A) propounded by the House of Representatives and the Senate, an exercise of the line-item veto delays the effective date of the disapproved provisions of the affected legislation. All provisions of the affected legislation are subject to the exercise of the general veto.

Respectfully submitted,

DANIEL E. WATHEN
Chief Justice
DAVID G. ROBERTS
CAROLINE D. GLASSMAN
ROBERT W. CLIFFORD
PAUL L. RUDMAN
KERMIT V. LIPEZ,
Associate Justices.

### ANSWERS OF JUSTICE DANA

To the Honorable House of Representatives and Senate of the State of Maine, and to His Excellency, Angus S. King, Jr., Governor of Maine:

I do not concur in the opinion of my colleagues on the Court and pursuant to Article VI, section 3 of the Maine Constitution, I, the undersigned Justice of the Supreme Judicial Court, have the honor to submit the following responses to the questions propounded by the House of Representatives and Senate on January 30, 1996, and by the Governor on February 14, 1996.

I first address the questions jointly propounded to us by the House of Representatives and the Senate.

QUESTION # 1: Once the Governor has exercised the line-item veto power under Section 2–A, if the Legislature overrides any dollar amount vetoed, is the Legisla-

ture required to return the document to the Governor to allow the Governor to use the more general veto power under Section 2 to veto the entire document, even though Section 2–A by its own terms provides that any part or parts of the legislative document not specifically revised become law?

ANSWER: I answer in the negative. In interpreting the Maine Constitution "we look primarily to the language used." *Allen v. Quinn*, 459 A.2d 1098, 1100 (Me.1983) (quoting *Farris ex rel. Dorsky v. Goss*, 143 Me. 227, 230, 60 A.2d 908, 910 (1948)). *See Wood v. State Admin. Bd.*, 255 Mich. 220, 238 N.W. 16, 18 (1931) (language of constitutional provision authorizing governor to veto distinct items of appropriation "must be read with all intendments against enlargement beyond its plain words"). In construing the Constitution, we seek the meaning which the words would convey to an intelligent, careful voter. *Allen*, 459 A.2d at 1100 (quoting *Kuhn v. Curran*, 294 N.Y. 207, 61 N.E.2d 513, 517–18 (1945)).

The second sentence of section 2–A provides that "[u]nless the Governor exercises the line-item veto ..., the powers of the Governor as set out in section 2 apply to the entire enacted legislation." Notwithstanding the assertion that this syntax is ambiguous, I believe it is not.[1] Unless we read "unless" to mean "even if," the Governor's line-item veto powers and general veto powers are mutually exclusive. If the word "unless" retains its usual meaning and the Governor exercises his line-item veto, he cannot subsequently exercise his general veto power.

The plain language in the fifth sentence of section 2–A that "the part or parts of the legislative document not specifically revised *become law*,"[2] is the natural consequence of the inability of the Governor to later veto the legislation pursuant to section 2. An interpretation that the Governor nevertheless retains section 2 general veto power over the entire legislation is contrary to the plain language of section 2–A because it would permit the use of a general veto as to items that have already "become law." *See Karcher v. Kean*, 190 N.J.Super. 197, 462 A.2d 1273, 1286 (App.Div.1983), *aff'd in part, rev'd in part*, 97 N.J. 483, 479 A.2d 403 (1984)[3]

---

1. Webster's New World Dictionary defines unless as "in any case other than; except if." Webster's New World Dictionary 496 (1982). My colleagues, in effect, substitute "Even if" for "Unless" in order to avoid the force of the only sentence that speaks directly to the interrelationship between section 2–A and section 2. Alternatively they may be reading the two clauses of the second sentence as though they were separated by a period rather than a comma.

2. The phrase "become law" is similar to words used in other provisions of the Maine Constitution to indicate the conclusion of the legislative process. *See* Me. Const. art. IV, pt. 3, § 19 ("Any measure referred to the people and approved by a majority of the votes given thereon shall ... take effect and "become a law...."); Me. Const. art. IV, pt. 3, § 2 (if a bill cannot be returned after a veto because the Legislature has adjourned and if there is no meeting of the Legislature the bill "shall not be a law"). Also, other states that give their governor some form of line-item veto power use the language "become law." *See,* e.g., Ill. Const. art. IV, § 9 ("Portions of a bill not reduced or vetoed shall become law.... If a reduced item is not so restored, it shall become law in the reduced amount."); Mass. Const. art. 63, § 5 ("The governor may disapprove or reduce items or parts of items in any bill appropriating money. So much of the bill as he approves shall upon his signing the same become law."); Mich. Const. art. V, § 19 (the

part or parts the governor approves "shall become law"); Tenn. Const. art. III, § 18 (the portions of a bill appropriating money that the governor approves "shall become law"); W.Va. Const. art. VI, § 51(11) (if the governor approves an appropriation bill it shall "become a law" and if two-thirds of the members of each house agree to pass the items disapproved or reduced by the governor, such items "shall become law" notwithstanding the objections of the governor); Wis. Const. art. V, § 10 (if two-thirds of both houses agree to approve the rejected part of an appropriation bill notwithstanding the governor's objections the rejected part "shall become law").

3. The governor's line-item veto power contained in the New Jersey Constitution provides in relevant part:

If any bill presented to the Governor shall contain one or more items of appropriation of money, he may object in whole or in part to any such item or items while approving the other portions of the bill.... If upon reconsideration ... one or more of such items or parts thereof be approved by two-thirds of all the members of each house, the same shall become a part of the law, notwithstanding the objections of the Governor....

N.J. Const. art. V, § 1, par. 15. The New Jersey Constitution has been construed to include the power of reduction. *Karcher v. Kean*, 97 N.J. 483, 479 A.2d 403, 416–417 (1984).

("In the absence of a vote overriding the Governor's veto ... the state of the appropriation following the Governor's line-item veto must ultimately stand as law."); *Johnson v. Walters*, 819 P.2d 694, 699 (Okl.1991)[4] (non-vetoed appropriation items have the force and effect of law because a specific affirmative approval from the Governor of individual items is not necessary).

Similarly, the sixth sentence of section 2–A stating that the specific dollar amounts that have been revised by the Governor "become law as revised by the Governor" unless the Governor's line-item veto is overridden by the majority vote of both houses of the Legislature, is also inconsistent with an interpretation that the Governor has a second opportunity to veto the legislation.

Construing constitutional provisions require "that the views of the framers be given great consideration." *See Opinion of the Justices*, 146 Me. 316, 323, 80 A.2d 866, 869 (1951). The legislative history indicates that the drafters of section 2–A intended that the amendment be a relatively "weak" line-item veto as line-item veto provisions go. They intended to give the Governor a surgical instrument to improve legislation he generally supported. *See* Patrick J. Lucey, *The Partial Veto in the Lucey Administration*, 77 Marq.L.Rev. 427, 428 (1994) (referring to Wisconsin's gubernatorial partial veto power as partial veto "scalpel"). The legislative record indicates that the proposal put before the voters was of this latter type:

> Representative Donnelly: Thank you Mr. Speaker, Men and Women of the House: As a member of the committee who is in support of Representative Kerr's proposal, and I compliment him for the drafting,

what I consider a fine line compromise on what a Line-item Veto means. Line-item Veto in this case, we had a number of proposals before us and they went from one extreme, which was a very heavy handed strong Line-item Veto to what I consider Representative Kerr's, which balanced the power of the Executive under this proposal and the continuing authority of this Legislative body.

Legis.Rec. 595–96 (1995).[5]

> Even the question put to the voters:

> Do you favor amending the Constitution of Maine to give the Governor a line-item veto over the expenditures of state funds, providing that vetoed items may be passed over the Governor's veto by a majority of all the elected members of the Senate and House of Representatives?

provides no hint that after the legislation was "passed over the Governor's veto" by a majority of both houses the Governor would thereafter get a second veto requiring a two-thirds vote of both houses for it to "become law."

Finally research has uncovered no other instance in which a state has granted its governor the sequential veto power discovered by my colleagues. Because a constitutional amendment may only be initiated in the Legislature, an "intelligent, careful voter" would not assume that the Legislature that has steadfastly resisted granting a line-item veto power to the Governor for 175 years would voluntarily place itself under such extreme executive pressure. When a legislature is considering its vote to override a governor's line-item veto, only in Maine may the Governor intimidate the Legislature with

Similar to the governor's line-item veto power in Maine, several states constitutions give the governor not only the power to veto an item but the option to reduce it. *See* Alaska Const. art. II, § 15; Cal. Const. art. IV, § 10; Haw. Const. art. III, § 16; Ill. Const. art. IV, § 9(d); Mass. Const. art. 63, § 5; Mo. Const. art. IV, § 26; Neb. Const. art. IV, § 15; N.J. Const. art. V, § 1, par. 15; Tenn. Const. art. III, § 18; W.Va. Const. art. VI, § 51(11).

**4.** The line-item veto authority contained in Oklahoma's Constitution provides that: "[A]ll items not disapproved [by the Governor] shall have the force and effect of law according to the original

provisions of the bill. Any item or items so disapproved shall be void, unless repassed by a two-thirds vote...." Okla. Const. art. VI, § 12.

**5.** Representative Whitcomb: "Line-item Veto is an appropriate question to ask the people. It doesn't diminish our power one iota...." Legis.Rec. 598 (1995). Representative Guerrette: "It is, in my mind, a well crafted bill that balances the needs of protecting the rights of this body to make legislation and yet giving the Governor the ability to take bad pieces of spending out of the budget." Legis.Rec. 840 (1995).

the threat of a subsequent veto of the entire legislation.[6]

Additionally, it is inaccurate to suggest that the construction I urge makes the line-item veto "virtually meaningless." First, the Governor retains his full veto power under section 2. Second, if the Governor generally approves of an appropriation bill but wants to selectively eliminate or reduce some items therein, for the first time in 175 years, he may do so.

QUESTION # 2: If the answer to Question # 1 is yes:

A. Does the 10-day limitation imposed on the Governor by Section 2 begin to run upon the initial presentation to the Governor regardless of whether the line-item veto power is used or does it begin to run when it is returned to the Governor again?

ANSWER: My answer to the first question makes it technically unnecessary for me to answer this second question. It is apparent, however, that neither section 2 nor section 2–A requires the Legislature to undertake or accomplish its override effort within any particular time period following the Governor's veto. In the case of a section 2 veto this period of uncertainty presents no problem because the legislation is a nullity unless and until it is overridden. The situation is otherwise with the line-item veto. That is why section 2–A provides that even before the override vote the monies appropriated by the Legislature and not eliminated or reduced by the Governor "become law" (to take effect in accordance with another provision of the Constitution). There is no metaphysical problem if the Legislature subsequently restores funds to a particular legislative line. Those funds are like a supplemental appropriation.

If as my colleagues suggest the two vetoes are not mutually exclusive, the Legislature could defer its line-item veto override vote until after the Governor no longer has the power to exercise a section 2 veto. In order to avoid this result, my colleagues infer from the Constitution a requirement that if the Legislature is going to override the line-item veto it must do so before the Governor's

section 2 veto power expires. Thus they argue, contrary to the express language of section 2–A, the balance of the legislation *does not* "become law" for the full ten days given the Governor under section 2.

The fact that legislation does not become law following a line-item veto until the Governor's power to exercise his section 2 veto expires reveals a serious flaw in my colleagues' construct. If the Legislature adjourns within the ten day period, the Governor's power to veto a bill under section 2 is extended until three days into the next meeting of the same Legislature. Me. Const. art. IV, pt. 3, § 2. Pursuant to my colleagues' construct if the Legislature overrides the Governor's line-item veto and then adjourns before the Governor exercises his section 2 veto, the legislation would not become law until "three days after the next meeting of the same legislature"; and if there is no such meeting, the legislation would never "be a law." It is difficult to reconcile such a result with the obvious intent of section 2–A that the unobjectionable parts of the legislation "become law."

QUESTION # 3: For emergency legislation, what is the effective date for any dollar amount revised by the Governor through the use of the line-item veto power in Section 2–A on which the Legislature fails to take action, fails to override or overrides?

ANSWER: For emergency legislation the effective date of the revised dollar amount is the date set forth in the legislation or the date of the Governor's line-item veto, whichever is later. If the veto is overridden, the effective date of the amount previously reduced and then restored is the date of the override or the date set forth in the legislation, whichever is later.

I next address those questions propounded to us by the Governor.

QUESTION # 1: Does the Executive have the constitutional authority to invoke the full veto powers of art. IV, pt. 3, § 2 following a legislative override of an earlier Executive section 2–A line-item veto? If

---

6. See footnote 4 in my colleagues' opinion.

yes, how is the ten day period for [a] section 2 veto calculated.

ANSWER: As discussed in my response to Question # 1 propounded by the House of Representatives and Senate, I answer in the negative.

QUESTION # 2: Upon receipt of a budget bill from the Legislature, does the Executive have the constitutional authority to invoke the line-item veto powers of Me. Const. art. IV, pt. 3, § 2–A within 24 hours, and then proceed to invoke the full veto powers of art. IV, pt. 3, § 2 within ten days of original presentment of the bill if the Legislature fails to act on the line-item veto?

ANSWER: As discussed in my response to Question # 1 propounded by the House of Representatives and Senate, I answer in the negative.

QUESTION # 3: Does the Executive's exercise of the section 2–A line-item veto power delay the effective date of all provisions of the affected legislation, or only the disapproved provisions, and, if so, until what date?

ANSWER: In accordance with my response to Question # 1 propounded by the House of Representatives and Senate, the Executive's exercise of the section 2–A line-item veto delays the effective date of only the difference between the amount of money that originally appeared in the bill as presented to the Governor and the Governor's reduced amount. If the Legislature overrides the Governor's line-item veto, the effective date of the amount restored is either 90 days after adjournment or in the case of emergency legislation, on the date of the override or the date set forth in the legislation, whichever is later. Me. Const. art. IV, pt. 3, § 16.

Respectfully submitted,

HOWARD H. DANA, Jr.
Associate Justice